## BOSLEY *v.* McLAUGHLIN, LABOR COMMIS-SIONER OF THE STATE OF CALIFORNIA.

## SAME *v.* SAME.

APPEAL FROM THE DISTRICT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF CALIFORNIA.

Nos. 362, 363. Argued January 12, 1915.—Decided February 23, 1915.

The nature of the work of pharmacists and student nurses in hospitals and the importance to the public that it should not be performed by those overfatigued, make it a proper subject for legislative control as to hours of labor of women so employed.

Whether there is necessity for limiting the hours of labor of women pharmacists and nurses in hospitals is a matter for legislative and not judicial control, and the legislature is not prevented by the due process clause of the Fourteenth Amendment from limiting such labor to eight hours a day or a maximum of forty-eight hours a week. Such a restriction is not so palpably arbitrary as to be an unconstitutional invasion of the liberty of contract.

*Miller* v. *Wilson, ante,* p. 373, followed in regard to the right of the legislature to limit the hours of labor of women other than pharmacists and student nurses employed in hospitals in California.

An exception of graduate nurses from the operation of a statute limiting the hours of labor of women is not so arbitrary, either as to female pharmacists or student nurses in hospitals, as to make the statute unconstitutional as denying equal protection of the law. The distinction in their employment is one of which the legislature may take notice.

Enforcement of a state police statute will not be enjoined on the ground that it violates the equal protection provision of the Fourteenth Amendment where the bill fails to show as to the persons attacking the statute any such injury, actual or threatened, as warrants resort to a court of equity.

The California Statute of 1911 as amended in 1913 limiting the hours of labor of women in certain employments including those in hospitals to eight hours in any one day or a maximum of forty-eight hours a week is not unconstitutional under the Fourteenth Amendment either as unduly abridging the liberty of contract, or as denying equal protection of the law because graduate nurses were excepted therefrom.

THE facts, which involve the constitutionality under the Fourteenth Amendment of the California Women's Eight Hour Labor Law, are stated in the opinion.

*Mr. John F. Bowie,* with whom *Mr. Charles S. Wheeler* was on the brief, for appellants:

The provision of the statute excepting graduate nurses from the operation of the law results in denying equal protection of the laws to all other women working in hospitals.

The fact that a law may be passed in exercise of the police power does not obviate the requirement of equal protection.

Equal protection of the laws requires that no impediment be interposed to the pursuits of one except as applied to the pursuits of others under like circumstances.

Appellants offered to prove as a fact that the statute imposed on women following the same pursuits as those followed by graduate nurses impediments not imposed on graduate nurses: that no difference existed justifying this discrimination.

The pursuits followed by graduate nurses in hospitals are the same as those followed by other women in hospitals and there is no difference in theory or past experience justifying the discrimination.

The statute will if enforced operate to deprive appellants of liberty without due process of law.

The act under consideration is not a health law.

Laws limiting hours of labor of adults operate to deprive those subject thereto of liberty.

Liberty includes freedom to work at a lawful calling.

Women are not wards of the State.

The statute operates to deprive appellants of liberty without due process of law.

The statute is invalid even if viewed as an exercise of

police power as the restrictions imposed are arbitrary and unnecessarily oppressive.

In support of these contentions see *Addyston Co.* v. *United States,* 175 U. S. 211; *Allgeyer* v. *Louisiana,* 165 U. S. 578; *Attorney General* v. *Sillem,* 33 L. J. Ex. 92; *Chicago, B. & Q.* v. *McGuire,* 219 U. S. 549; *Connolly* v. *Union Sewer Pipe Co.,* 184 U. S. 540; *Cotting* v. *Kansas,* 183 U. S. 79; *Ex parte Drayton,* 153 Fed. Rep. 986; *Dyke* v. *Elliott,* L. R. 4 P. C. 184; *Erie R. R.* v. *Williams,* 233 U. S. 685; *Eubank* v. *Richmond,* 226 U. S. 137; *German Alliance Ins. Co.* v. *Kansas,* 233 U. S. 389; *Gulf, Col. & Santa Fe R. R.* v. *Ellis,* 165 U. S. 150; *Ex parte Jentzsch,* 112 California, 468; *Lawton* v. *Steele,* 152 U. S. 133; *Lochner* v. *New York,* 198 U. S. 45; *Low* v. *Rees Printing Co.,* 41 Nebraska, 127; *Minnesota* v. *Barber,* 136 U. S. 313; *Mugler* v. *Kansas,* 123 U. S. 623; *Muller* v. *Oregon,* 208 U. S. 412; *Opinion of Justices,* 208 Massachusetts, 622; *People* v. *Elerding,* 254 Illinois, 579; *People* v. *Williams,* 189 N. Y. 131; *Ritchie* v. *People,* 155 Illinois, 98; *In re Sing Tuck,* 126 Fed. Rep. 386; *Smith* v. *Alabama,* 124 U. S. 465; *Smith* v. *Texas,* 233 U. S. 630; *Soon Hing* v. *Crowley,* 113 U. S. 703; *State ex rel. Galle* v. *New Orleans,* 113 Louisiana, 371; *United States* v. *Ragsdale,* Hempst. 479; *United States* v. *Wiltberger,* 5 Wheaton, 76; Statutes of California, 1913, p. 713.

*Mr. William Denman* and *Mr. Louis D. Brandeis,* with whom *Mr. G. S. Arnold* were on the brief, for appellees:

Eight-hour laws for women are valid.

Statutes have been passed for women's eight-hour laws in private businesses.

There are eight-hour laws for men and women in certain private businesses,—in mines, smelters, ore reduction; and in miscellaneous private businesses.

There are eight-hour laws for men and women telegraphers and telephone operators in railroad service; for

men and women in work done in private business for na-
tional, state or municipal governments and public em-
ployments.

The classifications made in Cal. Stat. 1911, chaps. 238
and 324, are not arbitrary.

There are recognized evils of employing pupil nurses,
while still in training, to perform the duties of graduate
nurses.

There was common knowledge and widespread discus-
sion of the exemption of Graduate Nurses before the
California Act of 1913 was passed.

There was general condemnation of the practice of
many hospitals in employing pupil nurses instead of grad-
uate nurses for the sake of financial gain.

The common practice in the best hospitals is to sharply
differentiate between graduate and pupil nurses as to
capacities, functions and duties.

There is an acknowledged power of associated graduate
nurses to improve standards in their profession.

The reasonableness of the eight-hour day for pupil nurses
is apparent as is also the reasonableness of not exempting
"experienced" nurses from the scope of the act and in-
cluding pharmacists within the scope of the act.

The act does not apply to women internes acting as
physicians and surgeons.

In support of these contentions see *Ex parte Hawley*, 98
N. E. Rep. 1126; *Hawley* v. *Walker*, 232 U. S. 718; *Muller*
v. *Oregon*, 208 U. S. 412; *People* v. *Elerding*, 98 N. E. Rep.
982; *State* v. *Somerville*, 122 Pac. Rep. 324; *Withey* v.
*Bloem*, 128 N. W. Rep. 913.

MR. JUSTICE HUGHES delivered the opinion of the court.

This is a suit to restrain the enforcement of the statute
of California prohibiting the employment of women for
more than eight hours in any one day or more than forty-

eight hours in any one week. The act is the same as that which was under consideration in *Miller* v. *Wilson, ante,* p. 373, decided this day, as amended in 1913. By the amendment, the statute was extended to public lodging houses, apartment houses, hospitals, and places of amusement. The proviso was also amended so as to make the statute inapplicable to 'graduate nurses in hospitals.' Stats. (Cal.) 1913, p. 713.

The complainants are the trustees of 'The Samuel Merritt Hospital' in Alameda, California, and one of their employés, Ethel E. Nelson. Their bill set forth that there were employed in this hospital approximately eighty women and eighteen men; that of these women ten were what are known as 'graduate nurses,' that is to say, those who had 'pursued and completed, at some training school for nurses in a hospital, courses of study and training in the profession or occupation of nursing and attending the sick and injured,' and had received diplomas or certificates of graduation. By reason of their qualifications, they were paid 'a compensation greatly in excess of that paid to female pupils engaged in nursing in hospitals while students of the training school.'

It was further averred that, in addition to these ten graduate nurses, certain other women were employed in the hospital, one as bookkeeper, two as office assistants, one as seamstress, one as matron or housekeeper, five who were engaged in ordinary household duties, and one—the complainant Ethel E. Nelson—as pharmacist. It was stated that this complainant was a graduate pharmacist, licensed by the state board; that she also acted as storekeeper, but that her chief duty was to mix and compound drugs for use in the treatment of the hospital patients. The general allegation was made that these last-mentioned eleven employés performed work that was in no manner different from that done by persons engaged in similar employments or occupations and not

employed in hospitals.' The apprehended injury to the complainant Nelson by reason of the interference of the statute with her freedom to contract was specially alleged.

It was also set forth that the hospital maintained a school with a three years' course of study wherein women were trained to nurse the sick and injured; that in this school there were enrolled twenty-four in the third year class, eighteen in the second year class, and twenty-three in the first year class; that a part of the 'education and training' of these 'student nurses' consisted in 'aiding, nursing, and attending to the wants of the sick and injured persons' in the hospital, this work being done while the student was pursuing the prescribed course of study; that the student nurses were paid $10 a month during each of the first two years of their course and $12.50 a month in the third year, and were also provided throughout the three years 'with free board, lodging and laundry.' It was averred that the cost to the hospital of maintaining the school was $2,500 a month, and that the cost of procuring the work to be performed by graduate nurses that was being done by student nurses would be not less than $3,600 a month. It was set forth as a reason why the work of the student nurses was done at less expense, that their compensation was paid not only in money, board, etc., but also partially in their education and training, their attendance on patients being in itself an indispensable part of their course of preparation. It was said further that their hours of labor must be determined by the exigencies of the cases they were attending.

The enforcement of the act with respect to these student nurses, it was stated, would require the hospital either to cease the operation of the school or largely to increase the number in attendance in order that an equal return in service could be obtained; and such increase would involve a greatly enlarged expense.

The complainants attacked the act on the grounds

that it interfered with their liberty of contract and denied to them the equal protection of the laws, contrary to the Fourteenth Amendment. And in support, it was asserted in substance, that labor in hospitals did not afford, in itself, a basis for classification; that there was no difference between such labor and the 'same kind of labor' performed elsewhere; that a hospital is not an unhealthful or unsanitary place; and, generally, that the statute and its distinctions were arbitrary.

Upon the bill, an application was made for an injunction pending the suit. It was heard by three judges and was denied. The appeal in No. 362 is from the order thereupon entered.

The defendants, the officers charged with the enforcement of the law, filed an answer. On final hearing, the complainants made an offer to prove that "all the allegations of fact set forth in the bill were true; that the fact that a woman was a graduate nurse merely showed that she had completed a course of study for the treatment of the sick, but that the course of study which a woman must take for that purpose was not prescribed by law or fixed by custom, but was such as any hospital or training school might, in the discretion of its governing officers see fit to prescribe; that the difference between a graduate nurse and an experienced nurse is a difference of technical education only, and that there is no standard by which this difference can be measured; that graduate nurses working in and employed by hospitals do not ordinarily perform therein the work of nursing the sick, but act as overseers to assistants to the medical staff." The District Judge thereupon stated that upon the hearing of the motion for an interlocutory injunction it had been held that the complaint did not state a cause of action and that it was considered unnecessary to take the evidence. The offer of proof was rejected and the bill of complaint dismissed. No. 363 is an appeal from the final decree.

1. *As to liberty of contract.* The gravamen of the bill is with respect to the complainant Nelson, a graduate pharmacist, and the student nurses. As to the former,— it appears that a statute of California limits the hours of labor of pharmacists to ten hours a day and sixty hours a week. Stats. (Cal.) 1905, p. 28. In view of the nature of their work, and the extreme importance to the public that it should not be performed by those who are suffering from over-fatigue, there can be no doubt as to the legislative power reasonably to limit the hours of labor in that occupation. This, the appellants expressly concede. But this being admitted to be obviously within the authority of the legislature, there is no ground for asserting that the right to contractual freedom precludes the legislature from prohibiting women pharmacists from working for more than eight hours a day in hospitals. The mere question whether in such case a practical exigency exists, that is, whether such a requirement is expedient, must be regarded as a matter for legislative, not judicial, consideration.

The appellants, in argument, suggest a doubt whether the statute is applicable to the student nurses, but the bill clearly raises the question of its validity as thus applied and urges the serious injury which its enforcement would entail upon the hospital. Assuming that these nurses are included, the case presented would seem to be decisive in favor of the law. For it appears that these persons, upon whom rests the burden of immediate attendance upon, and nursing of, the patients in the hospital are also pupils engaged in a course of study, and the propriety of legislative protection of women undergoing such a discipline is not open to question. Considerations which, it may be assumed, moved the legislature to action have been the subject of general discussion as is shown by the bulletin issued by the United States Bureau of Education on the 'Educational Status of Nursing' (Bulletin,

1912, No. 7). With respect to the "hours of duty' for student nurses, it is there said (pp. 29–32): "These long hours have always formed a persistent and at times an apparently immovable obstacle in efforts to improve the education of nurses and to establish a rational adjustment of practice to theory. . . . Ten or more hours a day in addition to class work and study might be endured for a period of two years without obvious or immediate injury to health. The same hours carried on for three years would prove a serious strain upon the student's physical resources, inflicting perhaps irreparable injury. The conclusions reached in this first study of working hours of students (1896) were that they were universally excessive, that their requirement reacted injuriously not only upon the students, but eventually upon the patients and the hospital, that it was a short-sighted and unjustifiable economy in hospital administration which permitted it to exist. Fifteen years later, statistics show that though the course of training has now in the great majority of schools been lengthened to three years, shorter hours of work have not generally accompanied this change, and that progress in that direction has been slow and unsatisfactory." After quoting statistics the bulletin continues: "In speaking of hours it must be remembered that these statistics refer only to practical work in ward, clinic, operating room, or other hospital department, and not to any portion of theoretical work; that the 10 hours in question are required of the student irrespective of lectures, class, or study. This practical work, also, is in many of its aspects unusually exacting and fatiguing; much of it is done while standing, bending, or lifting; much of it is done under pressure of time and nervous tension, and to a considerable degree the physical effort which the student must make is accompanied by mental anxiety and definite, often grave, responsibility. Viewed from any standpoint whatever, real nursing is difficult,

exacting work, done under abnormal conditions, and all the extraordinary, subtile, intangible rewards and satisfactions which are bound up in it for the worker cannot alter that fact.—Ten hours, or even nine hours, of work daily of this nature cannot satisfactorily be combined with theoretical instruction to form a workable educational scheme.— . . . How largely the superintendents of training schools feel the need of improvement in this direction may be gathered from the fact that over two-thirds of the replies to the questions on this subject suggested shorter hours as advisable or necessary, that a large proportion of these stated their firm belief in an 8-hour day, and that almost every reply which came showed clearly in one way or another the difficulties under which the schools were laboring in trying to carry on the hospital work with the existing number of students."

Whatever contest there may be as to any of the points of view thus suggested, there is plainly no ground for saying that a restriction of the hours of labor of student nurses is palpably arbitrary.

As to certain other women (ten in number) employed in the hospital, such as the matron, seamstress, bookkeeper, two office assistants and five persons engaged in so-called household work, the bill contains merely this general description without further specifications; and from any point of view it is clear, that, with respect to the question of freedom of contract, no facts are alleged which are sufficient to take the case out of the rulings in *Muller* v. *Oregon*, 208 U. S. 412; *Riley* v. *Massachusetts*, 232 U. S. 671; *Hawley* v. *Walker*, 232 U. S. 718; and *Miller* v. *Wilson*, *ante*, p. 373.

2. *As to the equal protection of the laws.* The argument in this aspect of the case is especially addressed to the exception of 'graduate nurses.' The contention is that they are placed 'on one side of the line and doctors, surgeons, pharmacists, experienced nurses and student nurses

and all other hospital employés on the other side of the line.' So far as women doctors and surgeons are concerned, the question is merely an abstract one as no such question is presented by the allegations of the bill with regard to the complainant hospital. (*Southern Railway* v. *King,* 217 U. S. 524, 534; *Standard Stock Food Co.* v. *Wright,* 225 U. S. 540, 550.) With regard to other nurses, whether so-called 'experienced' nurses or student nurses, it sufficiently appears that the graduate nurse is in a separate class. The allegations of the bill itself show this to be the fact. It is averred that the graduate nurses are those who 'have pursued and completed, at some training school for nurses in a hospital, courses of study and training in the profession or occupation of nursing and attending the sick and injured, and have received, in recognition thereof, diplomas or certificates of graduation from said courses of study.' And, in the appellants' offer of proof, it is said that 'graduate nurses working in and employed by hospitals do not ordinarily perform therein the work of nursing the sick, but act as overseers to assistants to the medical staff.' It may be, as asserted, that the difference in qualifications between a graduate nurse and an 'experienced nurse' is a difference of technical education only, but that difference exists and is not to be brushed aside. It is one of which the legislature could take cognizance. Not only so, but as such nurses act as overseers of wards or assistants to surgeons and physicians, it would be manifestly proper for the legislature to recognize an exigency with respect to their employment making it advisable to take them out of the general prohibition. Again, with regard to the complainant Nelson, who is a graduate pharmacist, while she has been graduated from a course of training for her chosen vocation, it is a different vocation. The work is not the same. There is no relation to the supervision of the wards, and, putting mere matters of expediency aside, there is no basis for concluding that

the legislature was without power to treat the difference as a ground for classification.

As to the ten other women employés, the validity of the distinction made in the case of graduate nurses is obvious. It should further be said, aside from the propriety of classification of women in hospitals with respect to the general conditions there obtaining (*Louisville & Nashville R. R.* v. *Melton*, 218 U. S. 36, 53, 54), that the bill wholly fails to show as to the employment of any of these persons any such injury—actual or threatened—as would warrant resort to a court of equity to enjoin the enforcement of the law.

And the objection based upon the failure of the legislature to extend the prohibition of the statute to persons employed in other establishments is not to be distinguished in principle from that which was considered in *Miller* v. *Wilson, supra,* and cases there cited.

*Decrees affirmed.*