JUAN GARCÍA CINTRÓN, Plaintiff and Appellee, *v.* MUNICIPALITY OF HUMACAO, Defendant and Appellant.

No. 7471. Argued February 7, 1940.—Decided October 24, 1940.

*Burset & Pérez Pimentel* for appellant. *Arturo Aponte* and *R. García Cintrón* for appellee.

Mr. Justice Hutchison delivered the opinion of the court.

The district court held to be unconstitutional an amendment to section 553 of the Penal Code, and a municipal ordinance adopted under the authority of that section as amended.

Prior to the amendment in question (Penal Code, 1937 ed.) the section, as amended in 1917 (Session Laws, Vol. II, p. 272), provided:

"Section 553.—That all day Sunday; from 12 o'clock noon on legal holidays, except Labor Day, that is, the first Monday in September, and the Fourth of July, when they shall remain closed all day; from 9 p. m. every Saturday; from 6 p. m. every working day; and from 10 p. m. on December 24 and 31 and January 5 of each year, commercial and industrial establishments shall remain closed to the public and suspend all work for employees one hour after closing, except the following:

"I. Libraries, sugar and alcohol factories, coffee-cleaning mills, and pharmacies only so far as relates to the dispatch of prescriptions and medicines at retail.

"II. Public markets, printeries, garages and bakeries; Provided, that no establishments in public market places for the sale of provisions and merchandise shall be exempt from compliance with this Act."

As amended in 1925 (Session Laws, p. 136), and as it stood at the time the suit was brought, the section reads in part as follows:

"Section 553.—That all day Sundays, except when the 24th of December and the 1st and 5th of January fall on Sunday; on the first Monday in September (Labor Day) and the 4th of July; on all legal holidays from 12 A. M.; on all working days from 6 P. M., and on the 24th and 31st days of December, and the 5th day of January of each year, from 10 P. M., commercial and industrial establishments shall remain closed to the public; and one hour after closing, no work of any kind shall be permitted the employees of said establishments, except those stated below:

"    *         *         *         *         *         *         *

"8. Pharmacies, the closing of which shall be regulated by ordinances enacted by the municipal assemblies; *Provided,* That in no case shall municipalities order the closing of pharmacies between the hours of 7 A. M. and 6 P. M., working days."

The eighth paragraph of section 34 of our Organic Act provides that:

"No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title; but if any subject shall be embraced in any act which shall not be expressed in the title, such act shall be void only as to so much thereof as shall not be so expressed."

The Act of 1925 was entitled: "An act to amend section 553 of the Penal Code, and for other purposes."

From 1917 to 1925, drug stores were included except as to "the dispatch of prescriptions and medicines at retail".

By the amendment, drug stores were excluded but a limited power of regulation was conferred upon the municipalities. The theory of the district court was that the Legislature's purpose to confer this power upon the municipalities was not clearly expressed in the title of the act. The title, of course, might have been more specific. The delegation of legislative authority, however, was but a branch of the subject matters, as indicated by the title. At least, it was not "so far foreign to the title" as to be unconstitu-

tional.  See *People* v. *P. R. Telephone Co.,* 40 P.R.R. 543; 25 R.C.L. 530, section 116; Note to *Lewis* v. *Drene* in 55 L.R.A. 833, 842; *Carter County* v. *Sinton,* 120 U.S. 517, 522; *Blair* v. *Chicago,* 201 U.S. 400, 451; *Posados* v. *Warner B. & Co.,* 279 U.S. 340, 344; 25 R.C.L. 505, section 88 et seq.; *Gallardo* v. *P. R. Ry. Light & Power Co.,* 18 Fed. (2d) 918; *Vidal* v. *Fernández,* 104 Fed. (2d) 606, and Cooley, Constitutional Limitations (6th ed.), 172.

The ordinance required all drug stores within the Municipality of Humacao to remain open on certain specified holidays from 7 A. M. to 12 and on all other days from 7 A. M. to 6 P. M.  It authorized the sale of medicines in cases of emergency after 11 P. M.  It provided that on all holidays not enumerated in the first section, all drug stores should be closed from 1 P. M. to 7 A. M. of the day following.  On Christmas Eve, New Year's Eve, and Saturdays, when falling on a holiday, they were permitted to remain open until 11 P. M.  The mayor was authorized to call a meeting of all drug store owners with a view to the establishment of weekly turns among such owners as might desire the privilege of remaining open during closing hours, upon condition that they should remain open all night.  Subject to approval by the mayor, these turns were to be assignable.

The district court also held: that the Legislature exceeded the limits of its police power; that the ordinance was unreasonable because prejudicial to the public and to plaintiff's customers, to plaintiff's rights and to the rights of other druggists in the municipality, and that the ordinance deprived plaintiff of the equal protection of the laws, was discriminatory and contrary to section 2 of the Organic Act and to the Fourteenth Amendment of the Federal Constitution.

The ordinance allows eleven working hours per day for five days in a week, sixteen hours on Saturdays and five hours on Sundays, a total of seventy-six hours per week.  In *Bosley* v. *McLaughlin,* 236 U.S. 385, 392, the Supreme Court speaking through Mr. Chief Justice Hughes said:

"It appears that a statute of California limits the hour of labor of pharmacists to ten hours a day and sixty hours a week. (Statute of Cal. 1905, page 28). In view of the nature of their work, and the extreme importance to the public that it should not be performed by those who are suffering from overfatigue, there can be no doubt. as to the legislative power reasonably to limit the hours of labor in that occupation ... The mere question whether in such case a practical exigency exists, that is whether such a requirement is expedient, must be regarded as a matter for legislative, not judicial, consideration."

See also *In re Twing*, 188 Cal. 261 and *M. Taboada & Co. v. Rivera Com'r*, 51 P.R.R. 246.

The ordinance before us, however, deals with closing hours, not with hours of labor. This difference was recognized in *Patton v. Bellingham*, 38 Pac. (2d) 364, 367, where the Supreme Court of Washington said:

"It is contended by respondents that it is necessary to limit the hours that a barber may labor, in order to prevent fatigue with its consequent hazards to the general public. It will be observed that the ordinance does not by its terms limit the hours of labor at all, but merely attempts to limit the time within which a shop may be kept open. If a shop remained open twenty hours of the day, working two shifts of ten hours each, or kept open twenty-four hours of the day, working three shifts of eight hours each, or four shifts of six hours each, there would be no violation of any regulation as to the hours of labor."

In *People v. García*, 22 P.R.R. 759, this court held that section 553 as it then stood was a valid enactment, since it left employees free to work nineteen hours a day.

From the dissenting opinion of Mr. Justice Holmes in *Lochner v. New York*, 198 U.S. 45, we quote the following:

"This case is decided upon an economic theory which a large part of the country does not entertain. If it were a question whether I agreed with that theory, I should desire to study it further and long before making up my mind. But I do not conceive that to be my duty, because I strongly believe that my agreement or disagreement has nothing to do with the right of a majority to embody their opinions in law. It is settled by various decisions of this court that

state constitutions and state laws may regulate life in many ways which we as legislators might think as injudicious or if you like as tyrannical as this, and which equally with this interfere with the liberty to contract. Sunday laws and usury laws are ancient examples. A more modern one is the prohibition of lotteries. The liberty of the citizen to do as he likes so long as he does not interfere with the liberty of others to do the same, which has been a shibboleth for some well-known writers, is interfered with by school laws, by the Post Office, by every state or municipal institution which takes his money for purposes thought desirable, whether he likes it or not. The Fourteenth Amendment does not enact Mr. Herbert Spencer's Social Statics. The other day we sustained the Massachusetts vaccination law. *Jacobson* v. *Massachusetts,* 197 U. S. 11. United States and state statutes and decisions cutting down the liberty to contract by way of combination are familiar to this court. *Northern Securities Co.* v. *United States,* 193 U. S. 197. Two years ago we upheld the prohibition of sales of stock on margins or for future delivery in the constitution of California. *Otis* v. *Parker,* 187 U. S. 606. The decision sustaining an eight hour law for miners is still recent. *Holden* v. *Hardy,* 169 U. S. 366. Some of these laws embody convictions or prejudices which judges are likely to share. Some may not. But a constitution is not intended to embody a particular economic theory, whether of paternalism and the organic relation of the citizen to the State or of *laissez faire.* It is made for people of fundamentally differing views, and the accident of our finding certain opinions natural and familiar or novel and even shocking ought not to conclude our judgment upon the question whether statutes embodying them conflict with the Constitution of the United States.

"General propositions do not decide concrete cases. The decision will depend on a judgment or intuition more subtle than any articulate major premise. But I think that the proposition just stated, if it is accepted, will carry us far toward the end. Every opinion tends to become a law. I think that the word liberty in the Fourteenth Amendment is perverted when it is held to prevent the natural outcome of a dominant opinion, unless it can be said that a rational and fair man necessarily would admit that the statute proposed would infringe fundamental principles as they have been understood by the traditions of our people and our law. It does not need research to show that no such sweeping condemnation can be passed upon the statute before us. A reasonable man might think it a

proper measure on the score of health. Men whom I certainly could not pronounce unreasonable would uphold it as a first instalment of a general regulation of the hours of work. Whether in the latter aspect it would be open to the charge of inequality I think it unnecessary to discuss."

The majority opinion relied upon by appellee, is not now the law. See *Bosley* v. *McLaughlin, supra.*

In 3 McQuillin on Municipal Corporations 398, we read:

"Section 1062.— .... Ordinances prescribing hours for the opening and closing of designated kinds of business, enacted in good faith which are reasonable, non-discriminatory (observing natural and fair classification), conform to the law and public policy of the state, and emanate from sufficient grant of power are valid, constitutional and enforcible."

In *Soon Hing* v. *Crowley,* 113 U.S. 703, the Supreme Court said: (Italics ours)

"There is no force in the objection that an unwarrantable discrimination is made against persons engaged in the laundry business, because persons in other kinds of business, are not required to cease from their labors during the same hours at night. There may be no risks attending the business of others; certainly not as great as where fires are constantly required to carry them on. The specific regulations for one kind of business, which may be necessary for the protection of the public, can never be the just ground of complaint, because like restrictions are not imposed upon other business of a different kind. *The discriminations which are open to objection are those where persons engaged in the same business are subjected to different restrictions, or are held entitled to different privileges under the same conditions."*

In *People* v. *Coto,* 24 P.R.R. 357, 358, we find the following:

"The conditions of life, the nature of business and the class of industries are not the same in all the municipalities which compose the territory of Porto Rico, hence the reason for conferring upon the local governments certain powers for adopting ordinances regulating public order according to the requirements of each town or city."

. In *People* v. *García, supra,* this court said:

"The statute as amended requires shops to be closed the whole of Sunday and from 6 P. M. on all working days; in other words the statute has not for its direct object the limitation of hours of labor but the regulating of periods of rest or cessation from labor throughout the entire week."

Practically the only difference between *People* v. *García* and the instant case is that in the *García* case a grocery store was involved, while here it is a drug store.

Whether or not existing conditions justify an exercise of the police power is primarily a question for the legislature and the judgment of the district court should not have been substituted for that of the municipal assembly in the instant case, unless the ordinance in question was clearly arbitrary and therefore without justification or excuse. This, we think, is not such a case.

The judgment appealed from must be reversed and the action will be dismissed.