**GOESAERT et al. v. CLEARY et al.**

**NADROSKI et al. v. SAME.**

Civil Actions Nos. 6618, 6619.

District Court, E. D. Michigan, S. D.

Nov. 20, 1947.

the
ore

736

PICARD, District Judge, dissenting.

Davidow & Davidow and Anne R. Davidow, all of Detroit, Mich., for plaintiffs.

Eugene F. Black, Atty. Gen. of Michigan, and Ben H. Cole and Charles M. A. Martin, Asst. Attys. Gen., for defendants.

Before SIMONS, Circuit Judge, and PICARD and LEVIN, District Judges.

LEVIN, District Judge.

These cases, brought as class actions under Rule 23 of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c, were consolidated and are now before this Court of Three Judges, convened pursuant to Judicial Code, Sec. 266, as amended, 28 U.S.C.A. § 380, on an application for an interlocutory injunction to restrain the enforcement of a law of the State of Michigan enacted by the Legislature on April 30, 1945, known as Act 133 of the Public Acts of 1945, Pub.Acts 1933, Ex.Sess., No. 8, § 19a, Mich.Stat.Ann. Sec. 18.990(1).

The complete act is set out in the margin hereof.[1] The pertinent portion of the legislation which the plaintiffs urge in their

[1] Mich.Stat.Ann. Vol. 13, Sec. 18.990 (1); Pub.Acts 1945, No. 133. "Sec. 19a. Same; licensing of bartenders. No person shall act as bartender in any establishment licensed under this act to sell alcoholic liquor for consumption on the premises in any city now or hereafter having a population of 50,000 or more, unless such person shall be licensed by the commission under the provisions of this section: Provided, That the commission may adopt rules and regulations governing the licensing of bartenders in other political subdivisions of the state. Such licenses shall expire on the thirtieth day of April following the issuance

suits as being violative of the Fourteenth Amendment to the Constitution of the United States, in that it denies them the equal protection of the laws and deprives them of their property without due process of law, may be summarized as follows: That in any city now or hereafter having a population of 50,000 or more, no female shall be licensed as a bartender (a bartender being described as a person who mixes or pours alcoholic liquor behind the bar), unless such person be the wife or daughter of the male owner of the licensed liquor establishment.

In the Goesaert case the plaintiffs are the mother, the owner of a bar, and a daughter employed by her, both of whom act as barmaids in a bar in the City of Dearborn, Michigan, which has a population, according to the last Federal census, in excess of 50,000. In the Nadroski case, the plaintiffs are a barmaid and a female bar owner, both acting as barmaids in Detroit, Michigan, a city having a population of over 50,000.

The vices in the act, according to the plaintiffs, may be summarized as follows:

1. It sets up an arbitrary standard of 50,000 as the population of any city to come under the act.

2. It discriminates against women owners of bars.

3. It discriminates against women bartenders.

4. It discriminates between daughters of male and female owners.

5. It discriminates between waitresses and female bartenders.

The first question to be considered is whether the statute is unconstitutional because it shows upon its face an unjust and unfair classification as to cities based upon population. The Legislature may have reasonably concluded that 'the need for regulation of women bartenders was much more urgent in the larger cities and we hold that such classification is not unreasonable and repugnant to the Federal Constitution. In Radice v. People of the State of New York, 264 U.S. 292, 44 S.Ct. 325, 68 L.Ed. 690, a New York statute prohibiting the employment of women in restaurants in cities of the first and second class during the night hours was upheld against the charge that it violated the equal protection clause of the Fourteenth Amendment by making an unreasonable and arbitrary classification. The Court said at page 296 of 264 U.S., at page 327 of 44 S.Ct.:

"The limitation of the legislative prohibition to cities of the first and second class does not bring about an unreasonable and arbitrary classification. (Citing cases) Nor is there substance in the contention that the exclusion of restaurant employees of a special kind, and of hotels and employees' lunch rooms, renders the statute obnoxious to the Constitution."

Plaintiffs do not challenge the right of the Legislature under its police power to regulate and even prohibit the sale of alcoholic liquor, Twenty-First Amendment to the Constitution of the United States, Carter v. Virginia, 321 U.S. 131, 64 S.Ct. 464, 88 L.Ed. 605; Ziffrin, Inc. v. Reeves, 308 U.S.

---

thereof. An annual license fee of $2.00 shall be paid by each applicant, which shall be credited to the general fund of the state. Each applicant for license shall be a male person 21 years of age or over, shall submit a certificate from his local board of health or health officer showing that such person is not affected with any infectious or communicable disease, and shall meet the requirements of the commission: Provided, That the wife or daughter of the male owner of any establishment licensed to sell alcoholic liquor for consumption on the premises may be licensed as a bartender by the commission under such rules and regulations as the commission may establish. A license issued under the provisions of this section may be revoked or suspended by the commission in case the licensee shall drink on duty or shall violate the rules and regulations of the commission. In case of the refusal to issue or the revocation or suspension of a license by the commission, the person aggrieved shall be entitled to a hearing before the commission. The findings of the commission at such hearing shall be final as to questions of fact. The commission shall issue to each licensee an identification card to which shall be attached a photograph of the licensee. Such identification card shall be carried by the licensee at all times while on duty and shall be shown by such licensee on request. For the purpose of this act a bartender shall be construed to mean a person who mixes or pours alcoholic liquor behind a bar."

132, 138, 60 S.Ct. 163, 84 L.Ed. 128; State Board v. Young's Market Co., 299 U.S. 59, 57 S.Ct. 77, 81 L.Ed. 38; but the plaintiffs say that when the state has legalized the sale of liquors and has authorized the establishment of a place to sell alcoholic beverages, it must treat all persons in the same class alike. They recognize the right of the Legislature to bar all women in the state from acting as bartenders, but they say that to permit women to act as waitresses in establishments selling liquor and not permit the same women to act as bartenders in the same establishment, to permit wives and daughters of male license holders to act as bartenders but not women owners or daughters of women owners, constitutes a violation of the Federal Constitution.

The plaintiffs rely heavily on Glicker v. Michigan Liquor Control Commission, 6 Cir., 160 F.2d 96. We find that case readily distinguishable from the instant case. It furnishes little support to plaintiffs' contentions. In the Glicker case the plaintiff alleged discriminatory conduct on the part of the defendant, Michigan Liquor Control Commission. It was the discriminatory action on the part of defendant which allegedly deprived plaintiff of the equal protection of the laws as guaranteed by the Fourteenth Amendment. In passing on the motion to dismiss the complaint, the Court held it was controlled by the allegations of fraudulent, wilful and deliberate discrimination against the plaintiff which required a trial of the facts. The instant case presents totally different questions. No allegations of discrimination by conduct are made. Rather, the only allegations of discrimination arise from the interpretation of the statute attacked. In construing the statute and in determining whether it violates the Fourteenth Amendment, we are not confronted with or controlled by any allegations in this case respecting the conduct of the defendant. Instead, we read the statute and determine its constitutionality.

The equal protection clause of the Fourteenth Amendment does not prohibit all classification, per se. Atchison, Topeka & Santa Fe R. Co. v. Matthews, 174 U.S. 96, 103, 19 S.Ct. 609, 43 L.Ed. 909.

The rules for determining whether a statute is arbitrary in its classification and consequently denies the equal protection of the laws to those whom it affects have been succinctly stated in Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, at page 78, 31 S.Ct. 337, at page 340, 55 L.Ed. 369, Ann.Cas.1912C, 160:

"1. The equal-protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

Further, in New York Rapid Transit Corp. v. City of New York, 303 U.S. 573 at page 578, 58 S.Ct. 721, at page 724, 82 L. Ed. 1024:

"Although the wide discretion as to classification retained by a Legislature often results in narrow distinctions, these distinctions, if reasonably related to the object of the legislation, are sufficient to justify the classification. (citing cases) Indeed, it has long been the law under the Fourteenth Amendment that 'a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it.' (citing cases) 'The rule of equality permits many practical inequalities.' (citing cases) 'What satisfies this equality has not been, and probably never can be, precisely defined.' "

Having these principles in mind we turn to the Michigan statute under consideration. It is conceivable that the Legislature was of the opinion that a

grave social problem existed because of the presence of female bartenders in places where liquor was served in the larger cities of Michigan. It may have been the Legislature's opinion that this problem would be mitigated to the vanishing point in those places where there was a male licensee ultimately responsible for the condition and the decorum maintained in his establishment. It may have determined that the self interest of male licensees in protecting the immediate members of their families would generally insure a more wholesome atmosphere in such establishments. The Legislature may also have considered the likelihood that a male licensee could provide protection for his wife or daughter that would be beyond the capacity of a woman licensee to provide for herself or her daughter. The power of the Legislature to make special provision for the protection of women is not denied.

We next consider the claimed discrimination in the statute between female bartenders and female waitresses, and we conclude that the Legislature may also have reasoned that a graver responsibility attaches to the bartender who has control of the liquor supply than to the waitress who merely receives prepared orders of liquor from the bartender for service at a table. It may have determined that the presence of female waitresses does not constitute a serious social problem where a male bartender is in charge of the premises, or where a male licensee bears the ultimate responsibility for the operation therein. It may reasonably be conceived that the Legislature deemed it necessary to have male control of and responsibility for the supply of liquor in the establishment but that it was not necessary to regulate the routine tasks of the waitresses in bringing food and drinks to patrons at individual tables.

In determining what may have motivated the Legislature in enacting this statute we must bear in mind that:

"A state legislature, in the enactment of laws, has the widest possible latitude within the limits of the Constitution. In the nature of the case it cannot record a complete catalogue of the considerations which move its members to enact laws. In the absence of such a record courts cannot assume that its action is capricious, or that, with its informed acquaintance with local conditions to which the legislation is to be applied, it was not aware of facts which afford reasonable basis for its action." Carmichael v. Southern Coal & Coke Co., 301 U.S. 495 at page 510, 57 S.Ct. 868, at page 872, 81 L.Ed. 1245, 109 A.L.R. 1327.

It should be emphasized that the Court cannot be concerned with the wisdom of the legislation or its practicability. Nebbia v. New York, 291 U.S. 502, 537, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469.

The plaintiffs' objection that the Legislature may not deny any woman the privilege of being employed as a bartender, if the right to engage in such employment is given to any group of women, is also without merit. There is no requirement that the State must extend its regulation to all cases which could be reached and improved by appropriate legislation, in order to sustain the constitutional validity of regulations for the correction of a wrong which in its experience is indicated. Miller v. Wilson, 236 U.S. 373, 384, 35 S.Ct. 342, 59 L.Ed. 628, L.R.A.1915F, 829. In Bosley v. McLaughlin, 236 U.S. 385, 35 S.Ct. 345, 59 L.Ed. 632, a California statute limited the permissible hours of work for women to eight hours a day. Graduate nurses, however, were expressly excepted from the operation of the law. The Court rejected the contention that the act violated the equal protection clause of the Constitution. As Mr. Justice Brandeis wrote in Farmers & Merchants Bank of Monroe, North Carolina, et al. v. Federal Reserve Bank of Richmond, Virginia, 262 U.S. 649 at page 661, 43 S.Ct. 651 at page 656, 67 L.Ed. 1157, 30 A.L.R. 635:

"It is well settled that the Legislature of a state may (in the absence of other controlling provisions) direct its police regulations against what it deems an existing evil, without covering the whole field of possible abuses."

See Sproles v. Binford, 286 U.S. 374, 396, 52 S.Ct. 581, 76 L.Ed. 1167.

██ In Fitzpatrick v. Liquor Control Commission, 316 Mich. 83, 93, 25 N.W.2d

118, the constitutionality of the act here under consideration was upheld. Although we are not bound by that decision, it is persuasive. The application for an interlocutory injunction is denied.

SIMONS, Circuit Judge, concurs.

PICARD, District Judge (dissenting).

The only question here is whether the state may disqualify certain women as bartenders while permitting this avenue of employment to other women having less legal right to so act than those prohibited.

Therefore I cannot concur with my respected associates for two reasons:

First, This law in my opinion violates Sec. 1 of the Fourteenth Amendment because it

A. Discriminates between persons similarly situated;

B. Denies plaintiffs equal protection of the laws; and

C. Its proviso that the wife and daughter of a male licensee may act as bartender while denying the same privilege to either the female licensee or her daughter, is palpably arbitrary, capricious and unreasonable, and not based on facts that can reasonably be conceived.

Second, That plaintiffs should be permitted to present evidence before we act on the interlocutory injunction.

### First.

*It violates Sec. 1 of the Fourteenth Amendment.*

The material part of Sec. 1 reads as follows:

" * * * nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

Conceding that the legislature, guarding the health, safety, and morals of the people, under its police power, has a tremendously wide latitude of discretion (Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78, 31 S.Ct. 337, 55 L.Ed. 369, Ann.Cas. 1912C, 160; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 510, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327);

agreeing that any discriminatory classifications need not be "with mathematical nicety, or because in practice it results in some inequality" (Lindsley v. Natural Carbonic Gas Co. supra [220 U.S. 61, 31 S.Ct. 340]), I nevertheless query: What is the purpose of the Fourteenth Amendment if not to prevent gross, unreasonable discrimination of this kind? Both the state and federal constitutions provide for checks and balances. Our legislature has not been given carte blanche to enact any and all kinds of legislation. As stated in Dobbins v. Los Angeles, 195 U.S. 223, 25 S.Ct. 18, 20, 49 L. Ed. 169:

"The question in each case is whether the legislature has adopted the statute in exercise of a reasonable discretion, or whether its action be a mere excuse for an unjust discrimination, or the oppression or spoilation of a particular class."

No legislature may in effect say "We make this distinction, foolish and unfair though we know it to be, because we are in the mood." It cannot—because our courts have vigilantly and consistently closed the entrance to those fertile fields of unconstitutionality, unfairness and inequality by reiterating again and again that no law may be capricious, unreasonable or arbitrary. This law, in my humble opinion, bears the stigma of all three because:

A. Discriminating Between "Persons Similarly Situated."

Mr. Justice McKenna in Ohio ex rel. Lloyd v. Dollison, 194 U.S. 445, 24 S.Ct. 703, 704, 48 L.Ed. 1062, says:

"Those contentions are that the Ohio statute denies plaintiff in error the equal protection of the law, and deprives him of liberty and property without due process of law.

*"The first contention can only be sustained if the statute treat plaintiff in error differently from what it does others who are in the same situation as he,—that is, in the same relation to the purpose of the statute."* (Emphasis ours)

Our own Michigan Supreme Court in People v. Case, 153 Mich. 98, 116 N.W. 558, 18 L.R.A.,N.S., 657, quoting from a Colorado decision, (Adams v. Cronin, 29 Colo. 488, 69 P. 590, 63 L.R.A. 61), puts its

stamp of approval on the constitutionality of an ordinance because it "does not operate as a discrimination between different licensees. It applies equally to everyone of that class, * * *." [153 Mich. 98, 116 N.W. 560] (Note: The Michigan law cannot pass this test of constitutionality.)

See also State ex rel. Galle v. City of New Orleans, 113 La. 371, 36 So. 999, 67 L.R.A. 76, 2 Ann.Cas. 92, where the court said:

"Ordinances must be general in their character, and operate equally upon all persons within the municipality, of the same class, to whom they relate."

In Watson v. Maryland, 218 U.S. 173, 30 S.Ct. 644, 647, 54 L.Ed. 987, we read:

"The selection of the exempted classes was within the legislative power, subject only to the restriction that it be not arbitrary or oppressive *and apply equally to all persons similarly situated.*" (Emphasis ours)

In the case at bar the Michigan Supreme Court boldly admits that this act discriminates between male and female licensees. In Fitzpatrick v. Liquor Control Commission, 316 Mich. 83, at page 91, 25 N.W.2d 118, at page 121, the court said:

"Plaintiffs claim (and it must be admitted) that in so doing the legislature has discriminated between male and female licensees, as to who may act as bartenders."

Briefly that proviso permits the male owner, his wife and daughter, to act as bartenders in his business, *but* denies the same privilege to both the female owner and her daughter.

If this is not an instance of unjust discrimination against persons similarly situated in the same business, in the same relation to the purpose of the statute and in the same class, it would be difficult to find one.

B—It Denies Plaintiffs Equal Protection of the Laws.

Let us review the admitted facts. According to the bill of complaint this is not a new venture for Mrs. Goesaert. She is not just now going into the liquor business under this new law. She started business, bought property, and incurred obligations under a law that permitted her to do exactly what her license said she could do—own and operate a business.

I accept the well known rule of law that a license to sell liquor is not a property right but a privilege (Glicker v. Michigan Liquor Control Commission, 6 Cir., 160 F. 2d 96), but here the question is not whether this woman will be granted a license. The issue is, having granted her a license, can the legislature arbitrarily and unreasonably change the rules in the middle of the game as against her alone because she happens to be a woman licensee.

In this connection it must be remembered that Michigan's liquor law, Pub.Acts 1933, Ex.Sess., No. 8, § 19, as amended by Pub. Acts 1945, No. 133, section 18.990, subsection 15, Mich.Stat.Ann., provides that one owning a liquor license, even in a community where the number of licensees operating exceeds the legal quota, may have his or her license renewed each succeeding year, and licenses almost automatically continue from year to year. Even quota restrictions do not prevail if such license was held before May 1, 1945. Plaintiff, Goesaert, did have such a license and evidently the legislature recognized in this privilege a property right that should not be restricted or removed. Still, while refusing to change the rules as unfair in one section of the act, in the succeeding section the legislature makes the debated change that has abridged her property rights immeasurably.

Where is the "equal protection" for her?

Under this act a woman whose husband, a male licensee, has just died, finds herself at an added disadvantage. She not only has lost her husband, but neither she nor her daughter may help run the family business as they did when the main breadwinner was alive. Across the street her male competitor may permit his wife and daughter to run his business even if he works in a factory miles away.

Has not this woman by every test of reasoning been deprived of the equal protection of the laws?

One's sense of fair play and justice rebels and it is not strange that in validating the constitutionality of this act in the Fitzpatrick case, supra, the court found it expedi-

ent to recall Justice Cooley's admonition in "Constitutional Limitations," viz., that courts cannot "run a race of right, reason, and expediency with the legislative branch of the state government." But to this I feel impelled to add an extract from Liggett Co. v. Baldridge, 278 U.S. 105, 49 S. Ct. 57, 59, 73 L.Ed. 204—

"A state cannot, *'under the guise of protecting the public,* arbitrarily interfere with private business or prohibit lawful occupations or impose unreasonable and unnecessary restrictions upon them.'" (Emphasis ours)

C—The Law is "Palpably Arbitrary, Capricious and Unreasonable."

Lindsley v. National Carbonic Gas Co., supra, cited by my colleagues, and a widely quoted case, holds that the constitutionality of any legislative enactment may be attacked "when it is without any reasonable basis, and therefore is purely arbitrary." And further that, "if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed." This law can be upheld then only if it is not arbitrary and unreasonable under any set of facts that can reasonably be conceived. Well, what facts can those be? The majority opinion seeks to enumerate by stating that the legislature might have had in mind, to-wit:

"* * * that a grave social problem * * * would be mitigated to the vanishing point in those places where there was a male licensee ultimately responsible for the condition and the decorum maintained in his establishment."

What has been the 14 years' experience of the Liquor Commission on that point? Have there been more, or less, violations where the licensee was a woman acting as her own bartender, as compared to licenses held by males? Has the "decorum" been better or worse?

Another suggested conceivable fact— "* * * the self interest of male licensees in protecting the immediate members of their families would generally insure a more wholesome atmosphere in such establishments."

What has been the experience here? Would not a widow, for example, with a valuable license be more determined than a male licensee in protecting her family and livelihood? Is a father more interested in assuring a "wholesome atmosphere" than a mother?

Further, that the legislature "may also have considered the likelihood that a male licensee could provide protection for his wife or daughter that would be beyond the capacity of a woman licensee * * *"

But it must be remembered that no male adult is required to be present when the wife or daughter is bartender. In fact it is common knowledge that there are many male licensees who have other jobs, helping out only in the bar, daytimes, if working nights, or at night when working daytime. Surely the wife or daughter of a male licensee is just as subject to the perils of her employment, in the absence of her husband or father, as the female licensee or her daughter. Has not the female licensee provided protection to herself and daughter in the past?

We are immediately challenged that this goes to the wisdom of the legislature and we agree that the wisdom of what the legislature has done is not the issue. This goes beyond the "wisdom," and we have searched in vain for the faintest semblance of facts that can be "reasonably conceived" to bolster this admittedly discriminatory legislation.

Nor can its enactment be logically defended on the theory that the police power is an inherent right of legislatures in matters of public health, safety, and morals. It is still necessary that the distinction be reasonably related to the object of the legislation (New York Rapid Transit Corp. v. New York, 303 U.S. 573, 578, 58 S.Ct. 721, 82 L.Ed. 1024) ; and in holding an ordinance which prohibited sale of liquor in dry goods stores unconstitutional (Chicago v. Netcher, 183 Ill. 104, 55 N.E. 707, 709, 48 L.R.A. 261, 75 Am.St.Rep. 93), the court said:

"The restriction is purely arbitrary, not having any connection with and not tending in any way towards the protection of,

the public against the evils arising from the sale of intoxicating liquor."

Can it be contended that it promotes public *safety* to permit only women to act as bartenders who happen to be the wife or daughter of the male owner of the business while neither the woman who owns her own license nor her daughter can so act?

Can it be contended that a woman bartender would promote the *morals* of an establishment if her husband or her father were the licensee more than if she or her mother held the license?

And is it claimed that the male owner is more solicitous of sanitation or *public health* than the female?

On all three points, safety, morals, and health, would not the contrary be more likely to exist?

### Something New?

My colleagues cite as "persuasive" but "not controlling" the Michigan decision in Fitzpatrick v. Liquor Control Commission, supra. Let us examine two citations given therein.

On page 124 of 25 N.W.2d it refers to Section 5363 of the Michigan Compiled Laws 1897, to-wit—

"That this act shall not be so construed as to prevent the wife or other females who are bona fide members of the family of a proprietor of a saloon from tending bar or serving liquors in his saloon."

This may well be the fount from which the present provision in our law drew the breath of life so further analysis is interesting. The words "in *his* saloon" are significant. Seldom if ever fifty years ago were women granted licenses to sell liquor. As a matter of fact women were not frequenters of bars or saloons. There was an ingenious subterfuge labeled "family entrance" but comparatively few women availed themselves of that means of seeking refreshments. Today there is no such prohibition affecting women. They can and are licensees, and can and do frequent places where liquor is sold. The 1897 law has no application.

The second citation refers to the California ordinance, People v. Jemnez, 49 Cal.App.2d Supp. 739, 121 P.2d 543, 544, claimed by our Michigan Supreme Court to be a "case quite in point with the case at bar." We quote:

"The provisions of this section shall not apply to the mixing of alcoholic beverages * * * *by any on-sale licensee* nor to the mixing of such beverages by the *wife of any licensee* on the premises for which her husband holds an on-sale license." Gen.Laws, Act 3796, § 56.4. (Emphasis ours)

Obviously in California a woman may also be a licensee and it is worthy of note that in California if a woman is the licensee *she may* act as bartender to the same extent as the wife of the male licensee. We agree that the case is in point but for plaintiffs—not defendant.

Not only California but other states having similar legislation have carefully avoided writing in any liquor prohibition that places woman in different categories.

Many of these "similar laws" are cited in defendant's brief but I find upon scrutiny that by inference at least, all favor plaintiffs and not defendant.

In Cronin v. Adams, 192 U.S. 108, 24 S.Ct. 219, 48 L.Ed. 365, a case relating to the constitutionality of a Denver ordinance, we find that women—*all women* including the wife and female children of the owner —were prohibited from entering any saloon.

In People v. Case, supra, the Flint ordinance barred women—*all women*—from being in or about the bar.

In City of Hoboken v. Goodman, 68 N.J. L. 217, 51 A. 1092, the ordinance in question is very significant. It prevented any female from acting as bartender unless she was the wife of the owner *or owned the business herself*.

The California Statutes, Deering's California General Laws, Vol. 2, Act 3796, page 1353, Sec. 56.4, page 1413, also exempted from the class prohibited the wife of the owner *and the owner herself*.

In Nelson, Chief of Police v. State ex rel. Gross, 157 Fla. 412, 26 So.2d 60, the prohibition was against *all women*—no exceptions.

Does it mean nothing that all states passing similar laws have avoided drawing the distinctions between women bartenders that Michigan has?

Can it be that members of the legislatures of those states are less solicitous of their women folks than Michigan? Or has "chivalry" (Fitzpatrick case, supra) returned to the Michigan legislature alone among our forty-eight states?

## Second.

*Plaintiffs should be permitted to present evidence.*

Under subdivision C of the first section, I ask what the experience of the Liquor Control Commission has been on those certain suggested facts that could reasonably "be conceived" to substantiate the law. This is in line with accepted decisions such as Borden's Co. v. Baldwin, 293 U.S. 194, 55 S.Ct. 187, 193, 79 L.Ed. 281, wherein Mr. Justice Stone and Mr. Justice Cardozo, concurring, said:

"We are in accord with the view that it is inexpedient to determine grave constitutional questions upon a demurrer to a complaint, or upon an equivalent motion, if there is a reasonable likelihood that the production of evidence will make the answer to the questions clearer."

The same rule of equity is followed in Polk Co. v. Glover, 305 U.S. 5, 83 L.Ed. 6, 59 S.Ct. 15; Gibbs v. Buck, 307 U.S. 66, 59 S.Ct. 725, 83 L.Ed. 1111; Franklin Tp. in Somerset County, N. J., v. Tugwell, 66 App.D.C. 42, 85 F.2d 208; and a very able but dissenting opinion by Justice Hughes—Morehead v. New York ex rel. Tipaldo, 298 U.S. 587, 56 S.Ct. 918, 80 L.Ed. 1347, 103 A.L.R. 1445.

Plaintiffs herein specifically charge that the law is arbitrary and our courts are unanimous that they should have an opportunity to prove their case. On the other hand, if we refuse to continue the injunction to hear what proofs they may have the damage to their business will have been done before any action on appeal can be taken. In any event, plaintiffs should be permitted to develop the factual situation.

## The Glicker Case.

Before concluding I again refer to Glicker v. Michigan Liquor Commission, supra. While the issue there was different there is much in common between these two cases and much substance in the Glicker case that can be applied here.

For example on page 99 of 160 F.2d we find:

"In Hartford Steam Boiler Inspection & Insurance Co. v. Harrison, 301 U.S. 459, 57 S.Ct. 838, 839, 81 L.Ed. 1223, the Court pointed out that while the Fourteenth Amendment allows reasonable classification of persons, yet it forbids unreasonable or arbitrary classification or treatment, and * * * the rights of all persons must rest upon the same rule under similar circumstances * * *. In Sunday Lake Iron Co. v. Township of Wakefield, 247 U.S. 350, 38 S.Ct. 495, 62 L.Ed. 1154, the Court said at page 352 of 247 U.S., at page 495 of 38 S.Ct., 62 L.Ed. 1154—'The purpose of the equal protection clause of the Fourteenth Amendment is to secure every person within the State's jurisdiction against *intentional and arbitrary discrimination,* whether occasioned by express terms of a statute or by its improper execution through duly constituted agents.' (Emphasis added.) * * * Snowden v. Hughes, supra, 321 U.S. 1, at page 8, 64 S.Ct. 397, at page 401, 88 L.Ed. 497, where it is stated—'The unlawful administration by state officers of a state statute fair on its face, resulting in its unequal application to those who are entitled to be treated alike, is not a denial of equal protection *unless there is shown to be present in it an element of intentional or purposeful discrimination.'* " (Emphasis added.)

The above could have been written for this case.

## Conclusion.

For the reasons given and because I firmly believe that if this court endorses this type of discriminating legislation it opens the door for further fine "distinctions" that will eventually be applied to religion, education, politics and even nationalities, I must dissent.