23 N.J. Super. 195 (1952)
92 A.2d 811
CARMIN LAROCCA AND HELEN LAROCCA, PLAINTIFFS-APPELLANTS,
v.
AMERICAN CHAIN AND CABLE COMPANY, INC., ET AL., DEFENDANTS, AND RICHARD A. ENCH AND CHARLES DEWITT, DEFENDANTS-RESPONDENTS.
Superior Court of New Jersey, Appellate Division.
Argued October 27, 1952.
Decided November 24, 1952.
*196 Before Judges McGEEHAN, BIGELOW and JAYNE.
Mr. Harry Chashin and Mr. Hyman W. Rosenthal argued the cause for appellants (Messrs. Marcus & Levy, attorneys; Mr. Max D. Forrest, of counsel).
Mr. Robert Shaw argued the cause for respondents (Messrs. Shaw, Hughes & Pindar, attorneys).
The opinion of the court was delivered by JAYNE, J.A.D.
A mishap occurred on January 11, 1949 in the City of Paterson in which the plaintiff Carmin Larocca sustained bodily injuries.
The associated circumstances may be concisely imparted. In the erection of an addition to a building of the American Textile Company at Oliver and Jersey Streets, Timber Structures, Inc., the employer of the plaintiff Carmin Larocca, was contractually obligated to fabricate certain trusses 67 *197 feet in length and approximately four tons each in weight and to set each in place upon upright steel columns 15 feet in height. A motor-powered crane having the capacity to elevate and suitably locate the trusses on the columns would be an efficient hoisting instrument, but Timber Structures, Inc. did not own one of the required type.
In this exigency Timber Structures, Inc. procured from the defendant Ench the use of the latter's crane and the services of the operator DeWitt. Some of the details and legally significant features of that engagement will be subsequently discussed.
It was in the process of raising one of the trusses by means of the crane that the truss was noticed to be somewhat out of level and Schmidt, the foreman in the employ of Timber Structures, Inc., directed the plaintiff Carmin Larocca and one Marrino to seat themselves on one side of the suspended truss to equalize its desirable balance. There is testimony that when the truss was elevated to a height of about 15 feet, the operator of the crane permitted the load to drop slightly and its descent was arrested by a sudden jerk, whereupon a piece of cable supplied by Timber Structures, Inc., which encircled the truss, broke and Carmin Larocca fell to the ground.
The foregoing introductory disclosure of the general background of the ensuing litigation must be supplemented by the information that the present action was instituted by Carmin Larocca and his wife, Helen Larocca, as plaintiffs against Rae Construction Co., Inc., American Chain and Cable Company, Inc., Richard A. Ench, the owner of the crane, and Charles DeWitt, the operator, as defendants. The alleged causes of action against Rae Construction Co., Inc., and against American Chain and Cable Company, Inc., were voluntarily discontinued. The action on behalf of both plaintiffs was accordingly prosecuted at the trial against the defendants Ench and DeWitt.
The plaintiff Carmin Larocca sought the recovery from those defendants of compensatory damages for the bodily injuries *198 and incidental losses which he sustained in the mishap. His wife, Helen, demanded damages for the consequential deprivation "of her husband's aid, assistance, society and * * * consortium."
The trial resulted in the entry of a final judgment of involuntary dismissal of the alleged cause of action of Helen Larocca in favor of both defendants; an involuntary dismissal of the alleged cause of action of Carmin Larocca in favor of the defendant Ench and a voluntary dismissal of his action against the defendant DeWitt. This appeal is of course addressed to the judgments of involuntary dismissal.
The appeal from the dismissal of the alleged cause of action of Mrs. Larocca is evidently intended to project anew the question whether in this jurisdiction a wife can now maintain an action at law against a third party for the recovery of damages for the deprivation of the comfort and society of her husband, commonly called consortium, in consequence of bodily injuries sustained by her husband through the negligent act or omission, free from malice and intentional wrongdoing of the third party. It was resolved by Justice Bergen in 1921 that such an action was not maintainable. Tobiassen v. Polley, 96 N.J.L. 66 (Sup. Ct. 1921). Contrast, Sims v. Sims, 79 N.J.L. 577 (E. & A. 1910); Alfone v. Newark Umbrella Frame Co., 13 N.J. Super. 526 (Cty. Ct. 1951); Danek v. Hommer, 14 N.J. Super. 607 (Cty. Ct. 1951), affirmed 9 N.J. 56 (1952).
The denial to a wife of such a cause of action has been in the past almost universal throughout the several state jurisdictions. Consult annotations in 5 A.L.R. 1050; 13 A.L.R. 1333; 18 A.L.R. 882; 37 A.L.R. 897; 59 A.L.R. 681; 3 Restatement, Torts, sec. 695; 27 Am. Jur. 114, sec. 514.
The principal reasons expressed by the courts, succinctly stated, are: (1) for intentional injuries to the rights of the wife there can be no double recovery. Nash v. Mobile & Ohio Ry. Co., 149 Miss. 823, 116 So. 100, 59 A.L.R. 676 (Sup. Ct. 1928); Feneff v. New York Cent. & H.R.R. Co., 203 *199 Mass. 278, 89 N.E. 436, 24 L.R.A., N.S., 1024 (Sup. Jud. Ct. 1909); (2) the sole loss to the wife is the deprivation of consortium, which loss is too remote to be capable of measure and lies in a region into which the law does not enter. Marri v. Stamford St. R. Co., 84 Conn. 9, 78 A. 582, 33 L.R.A.N.S., 1024 (Sup. Ct. Err. 1911); Goldman v. Cohen, 30 Misc. 336, 63 N.Y.S. 459 (Sup. Ct. 1900); (3) the married women's acts did not create any new substantive right in the wife but affected only her procedural rights. Tobiassen v. Polley, supra; Boden v. DelMar Garage, 205 Ind. 59, 185 N.E. 860 (Sup. Ct. 1933); (4) fear that liability for losses arising out of negligence would be expanded inordinately. Stevenson v. East Ohio Gas Co., 73 N.E.2d 200 (Ohio App. 1946).
However, ever since the equally universal enactment of the so-called married women's acts designed to place the wife on a legal parity with the husband, the logic of the reasons given for denying the wife's right of action while continuing to grant a like right of action to the husband, has been vigorously questioned by some courts and by many text book authors and commentators. Harper, Law of Torts 566 (1941); Prosser, Torts 948 (1941); 64 Harvard L. Rev. 672 (1951); 36 Cornell L. Quart. 154 (1950); 26 N.Y.U. Law Rev. 205 (1951); 35 Ky. L. Rev. 220, 223 (1947); 30 Col. L. Rev. 651, 668 (1930); 22 Mich. L. Rev. 1, 8 (1923); Helmstetler v. Duke Power Co., 224 N.C. 821, 32 S.E.2d 611 (Sup. Ct. 1945); McDade v. West, 80 Ga. App. 481, 56 S.E.2d 299 (Ct. App. 1949), are a few examples. See modified view anent wife's recovery of expenses in McDaniel v. Trent Mills, 197 N.C. 342, 148 S.E. 440 (Sup. Ct. 1929).
The effort to promote a reconsideration of the subject has been noticeably invigorated by the recent decision in Hitaffer v. Argonne Company, Inc., 87 U.S. App. D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366 (D.C. Cir. 1950), certiorari denied 340 U.S. 852, 71 S.Ct. 80, 95 L.Ed. 624 (1950), from which the following pertinent quotations are borrowed:
*200 "There can be no doubt, therefore, that if a cause of action in the wife for the loss of consortium from alienation of affections or criminal conversation is to be recognized it must be predicated on a legally protected interest. Now then, may we say that she has a legally protected and hence actionable interest in her consortium when it is injured from one of these so-called intentional invasions, and yet, when the very same interest is injured by a negligent defendant, deny her a right of action? It does not seem so to us. Such a result would be neither legal nor logical. On the contrary, it has already been held in this jurisdiction that her interest in the marriage relation is co-extensive with that of her husband, and that any interference therewith is a violation of her legal rights. When a legally protected interest of a person has been injured by the wrongful act of another, it is no less actionable because the invasion was negligent rather than intentional or malicious. Some authorities seek to avoid the impact of such logic by holding that in the cases involving intentional invasions to the consortium the injury to the wife is direct, because the husband having participated with the defendant, cannot join with her and benefit from his own wrong. The wife therefore has a cause of action. But we are unable to see how the injury to the consortium is any less direct when the invasion is by a negligent act. Certainly the directness or remoteness of the injury cannot be affected by the fact that in such cases the measure of the wife's damages may be less because of the husband's recovery of the diminished value of his obligation to support his wife. All that it could possibly do is remove from the arena of compensable injuries those already redressed.

* * * * * * * *
"Furthermore, we can conceive of no reasons for denying the wife this right for the reason that in this enlightened day and age they simply do not exist. On the contrary it appears to us that logic, reason and right are in favor of the position we are now taking. The medieval concepts of the marriage relation to which other jurisdictions have reverted in order to reach the results which have been handed to us as evidence of the law have long since ceased to have any meaning. It can hardly be said that a wife has less of an interest in the marriage relation than does the husband or in these modern times that a husband renders services of such a different character to the family and household that they must be measured by a standard of such uncertainty that the law cannot estimate any loss thereof. The husband owes the same degree of love, affection, felicity, etc., to the wife as she to him. He also owes the material service of support, but above and beyond that he renders other services as his mate's helper in her duties, as advisor and counselor, etc. Under such circumstances it would be a judicial fiat for us to say that a wife may not have an action for loss of consortium due to negligence." [87 U.S. App. D.C. 57, 183 F.2d 817.]
*201 The foregoing excerpts are here reproduced because they are characteristically expressive of the modern criticism of the present denial of the right of a wife to prosecute such an action.
There are but two alternatives suggested: (1) take the analogous cause of action away from the husband, or (2) confer a like cause of action upon the wife. In a very recent decision rendered on July 11, 1952, by the English House of Lords in Best v. Samuel Fox & Co., Ltd. (Weekly Notes, July 25, 1952), in affirming the denial of the cause of action, it was stated: "If a change was to be made his lordship would prefer to abolish the husband's right." Many of our commentators have favored the other alternative.
No one agrees that any precedent develops such a petrified rigidity that it must always be adhered to with inflexible devotion. It is the life of the law to adjust the weight of a precedent in response to the common standards of society in order to restore, where needed, the equilibrium between precedent and justice. Perhaps our Supreme Court will find in this case reason to consider the entire subject. At the moment it must be concluded that the dismissal of Mrs. Larocca's action was in accord with the existing law of our State.
There remains the consideration of the propriety of the dismissal of Mr. Larocca's action against Ench. In this undertaking we become basically interested in the "borrowed servant rule" exemplified by such decisions as those rendered in Courtinard v. Gray Burial, etc., Co., 98 N.J.L. 493 (E. & A. 1923); Busch v. Seaboard By-Product Coke Co., 100 N.J.L. 304 (E. & A. 1924); Lacombe v. Cudahy Packing Co., 103 N.J.L. 651 (E. & A. 1927); Errickson v. F.W. Schwiers, Jr., Co., 108 N.J.L. 481 (E. & A. 1932); Younkers v. Ocean County, 130 N.J.L. 607 (E. & A. 1943); Roberts v. Geo. M. Brewster & Son, Inc., 13 N.J. Super. 462 (App. Div. 1951), certif. denied, 7 N.J. 582 (1951); Devone v. Newark Tidewater Terminal, Inc., 14 N.J. Super. 401 (App. Div. 1951)
*202 The opportunity, even were it available, further to augment the continuing discussion of the determinative criteria properly to be employed in resolving the liability of the general employer in cases of this nature need not be pursued. But in the detection of permissible inferences to be legitimately drawn from the testimony in the present case, it is wise to note that the American Law Institute in the Restatement of the Law of Agency, sec. 227, comment b, and our former Court of Errors and Appeals in the Younkers case, supra, have adopted the conclusions expressed by Justice Cardozo in Charles v. Barrett, 233 N.Y. 127, 129, 135 N.E. 199 (Ct. App. 1922).
It is phrased as follows in the Restatement:
"b. Inference that original service continues. In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered another, he is performing the business entrusted to him by the general employer. There is no inference that because the general employer has permitted a division of control, he has surrendered it."
Here it admittedly appears that the defendant Ench was the owner of the crane. The defendant DeWitt, the operator of the crane, was in the regular employ of Ench. The Timber Structures, Inc. engaged from Ench the services of both the crane and the operator on the basis of $12 per hour. The crane was an instrument of "substantial" value over which superintendence in its protection and proper operation is reasonably required in the interest of its owner. Ench "would not rent it without an operator." He "rented equipment out." In this instance the operator remained on his payroll. Ench supplied the fuel for the motor of the crane.
True, there was cooperation and coordination in the performance of the work between the foreman of Timber Structures and the operator of the crane. Did the giving of signals by the foreman constitute the giving of orders or of information? Was the obedience of the operator to the signals and incidental directions of the foreman cooperation rather than subordination? Vide, Standard Oil Co. v. Anderson, *203 212 U.S. 215, 29 S.Ct. 252, 53 L.Ed. 480 (1909). Was the operator under only the partial control of Timber Structures? Vide, Anderson v. Abramson, 234 Iowa 792, 13 N.W.2d 315 (Sup. Ct. 1944); American Tel. & Tel. Co. v. Ohio Valley Sand Co., 131 W. Va. 736, 50 S.E.2d 884 (Sup. Ct. App. 1948). The answers to such questions are normally elicited from the jury.
The trial judge recognized that the issue relating to the alleged negligent operation of the crane by DeWitt was in the existing state of the evidence a jury question. His dismissal of the action was obviously based upon the conviction that there was a destitution of proof of the relationship of master and servant between Ench and DeWitt existing at the time of the accident.
Our study of the evidence persuades us that the evidence was productive of divergent and oppugnant inferences concerning the continuance or surrender of the relationship and that in such a posture of the proof, the dismissal of the action as a matter of law was erroneous.
The judgment in favor of the defendants in the cause of action prosecuted by Helen Larocca is affirmed, without costs. The judgment of dismissal in favor of the defendant Ench in the action of the plaintiff, Carmin Larocca, is reversed and a new trial granted. Costs in the latter case to abide the event.
BIGELOW, J.A.D. (concurring).
I am somewhat concerned lest the opinion of my colleague, Judge JAYNE, may give the impression that we consider the law governing the claim of Mrs. Larocca to be in some degree uncertain. On the contrary, it appears to us to be entirely settled. It is not usual for a court to pronounce the law unwise or unjust, or in need of amendment, and we make no hint to that effect in the present instance. Lastly, I deprecate the implied suggestion that an alteration in the established law be sought by appeal to our Supreme Court rather than by petition to the Legislature.