Charles V. KARCZEWSKI and Alma L. Karczewski, Plaintiff,

v.

The BALTIMORE AND OHIO RAIL-ROAD COMPANY, Defendant.

No. 66 C 2074.

United States District Court
N. D. Illinois, E. D.

June 27, 1967.

Patrick Mahoney, Edward J. Burke, Chicago, Ill., for plaintiffs.

John Gobel, N. E. Liontakis, R. L. Galassini, Chicago, Ill., for defendant.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

### Defendant's Motion for Summary Judgment on Count II

This two count action, removed from the state courts, stems from an auto-train wreck in which plaintiff Charles Karczewski, the driver of the automobile, allegedly suffered permanent injuries of a serious nature and was rendered sexually impotent. In count two, Charles' wife Alma Karczewski, seeks recovery of $350,000 for loss of consortium with her husband, which is allegedly a result of defendant's negligent conduct.

The accident occurred in Gary, Indiana. Defendant moves for summary judgment on count two, urging that Indiana law, which is applicable to this suit, does not recognize a cause of action based on loss of consortium brought by the wife of a negligently injured man.

Under Illinois conflict of laws principles, the law of the place of the tort must determine the substantive law in these circumstances. Insull v. New York World-Telegram Corp., 172 F.Supp. 615, 632 (N.D.Ill.1959); Colligan v. Cousar, 38 Ill.App.2d 392, 187 N.E.2d 292 (1963); Wartell v. Formusa, 34 Ill.2d 57, 59, 213 N.E.2d 544 (1966); Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); Klaxon v. Stentor Electric Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Accordingly, Indiana law is controlling.

It is undisputed that despite criticism in Miller v. Sparks, 136 Ind.App. 148, 189 N.E.2d 720, 722 (1963), Indiana does not allow a wife to sue for loss of consortium because of negligent injury to her husband. Brown v. Kistleman, 177 Ind. 692, 98 N.E. 631, 40 L.R.A.,N.S., 236 (1912); Boden v. Del-Mar Garage, 205 Ind. 59, 185 N.E 860 (1933); Miller v. Sparks, supra; See Burk v. Anderson, 232 Ind. 77, 109 N.E.2d 407 (1952). However, in the reciprocal situation, he may recover for loss of consortium for negligent injury to his wife. Burk v. Anderson, supra. Thus, if we follow Indiana law, we must dismiss count two of the complaint.

The recent case of Owen v. Illinois Baking Corp., 260 F.Supp. 820 (W.D. Mich.1966), however, casts doubt upon the constitutional validity of the Indiana position. *Owen* expressly upholds the wife's right to sue in Indiana for loss of consortium, on facts foursquare with those involved here, by holding the current doctrine to be contrary to the equal protection clause of the Fourteenth Amendment. Allowing the husband to maintain an action for loss of consortium while denying a similar action to the wife seemed an arbitrary and unreasonable classification to Judge Fox.

Neither of the parties cited the *Owen* case in their original briefs, so we asked them to file supplementary briefs

discussing the vitality of the Indiana law in light of *Owen,* and to focus on the equal protection issue, which had not previously been raised by the plaintiff.

It is clear that under Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the federal courts in diversity cases must follow state substantive law. However, they may look to the governing federal law when a federal question is raised. Palmer v. Bender, 287 U.S. 551, 53 S.Ct. 225, 77 L.Ed. 489 (1933); Porter Royalty Pool Co. v. Commissioner of Internal Revenue, 165 F.2d 933 (6th Cir. 1948). It is indisputable that federal law governs when, as here, a state law is challenged for federal constitutional reasons. Thus we would not be bound to adhere to Indiana law, if we determined it to be unconstitutional.

*Owen* was decided in the Michigan Federal District Court. It was brought by the wife of a man negligently injured by the defendant, to recover damages for loss of consortium. The accident in Owen, like the instant case, occurred in Indiana. Under Michigan conflicts law, the Indiana substantive law governed the action. In reaching its decision, the court cited approvingly the landmark case of Hitaffer v. Argonne Co., 87 U.S.App.D.C. 57, 183 F.2d 811 23 A.L.R.2d 1366 (1950), which was the first case to uphold the wife's action for loss of consortium where negligence was the cause of the accident.[1] In addition, Judge Fox noted that the Indiana law was severely criticized, although not overturned, in Burk v. Anderson, 232 Ind. 77, 109 N.E.2d 407 (1952). He concluded that since in Indiana, husbands may maintain actions for loss of consortium for injuries to their wives, wives should have an equal right, and:

"To draw such a distinction between a husband and wife is a classification which is unreasonable and impermissible, and is likewise a violation of the Fourteenth Amendment guarantees." (260 F.Supp. at 822)

But as defendant pointed out, the Court essentially based its decision on the following: (at 821)

"And to grant a husband the right to sue on this right while denying the wife access to the courts in assertion of this same right is too clearly a violation of Fourteenth Amendment equal protection guarantees to require citation of authority."

Thus we think that the *Owen* case, in and of itself, is not of great precedential weight on the issue, since, as indicated by the above quotation, it did not actually analyze the problem, but essentially stated a conclusion. Nevertheless, the decision in that case raises a major issue, to which we propose to give careful consideration. We think a proper discussion of the issue should begin with an historical analysis of the disputed right of action.

The early status of women during the sixteenth and seventeenth centuries vitally affected the common law attitude toward relational marital interests. The wife was viewed for many purposes as a chattel of her husband, and he was entitled to her services in the eyes of the law. Thus he was given the right at common law to recover for injuries to his wife caused by intentional wrongs, as compensation for the loss of her services. The wife, however, as a "servant" was not entitled to sue for the loss of services of her husband, since in theory he provided none.

The Married Women's Acts, however, removed some of the disabilities of married women, and allowed them to seek redress for torts intentionally inflicted upon their husbands. Indeed, in Indiana, they have long been able to

---

1. A North Carolina case, Hipp v. E. I. DuPont de Nemours & Co., 182 N.C. 9, 108 S.E. 318, 18 A.L.R. 873 (1921), established the wife's right to sue for loss of consortium caused by negligent conduct, but was subsequently overruled in Hinnant v. Tidewater Power Co., 189 N.C. 120, 126 S.E. 307, 37 A.L.R. 889 (1925).

sue for an intentional interference with the marital relationship, in the form of an action for alienation of affections. Holmes v. Holmes, 133 Ind. 386, 32 N.E. 932 (1893).

With the development of the law of negligence, the Indiana courts gave recognition to the husband's right to recover for negligent harm to his conjugal interests. Burk v. Anderson, 232 Ind. 77, 109 N.E.2d 407 (1952). As has been indicated, wives are denied a similar right in Indiana insofar as consortium is involved.

Indeed until 1950, wives were denied this right in all states. But Hitaffer v. Argonne Co., 87 U.S.App.D.C. 57, 183 F.2d 811, 23 A.L.R.2d 1366 (1950), established the wife's right to sue for loss of consortium for negligent conduct. Since that decision, the courts of last resort for the most part have split on the issue.[2]

■ Part of the increased recognition of the wife's rights may have stemmed from the expanded scope of interests thought to be encompassed by the action for the loss of consortium. Whereas originally, it was thought to include only the loss of services, it became clear that benefits peculiar to the conjugal relationship were contained as well. These included certain sentimental values such as loss of love, affection, society and companionship, as well as loss of sexual relations. Burk v. Anderson, 232 Ind. 77, 109 N.E.2d 407 (1952).

There appeared to the *Hitaffer* court no reasonable justification for differentiating between marriage partners on this issue. It was determined that since both have an equal interest in the incidents of the marriage, both must have equal redress to the courts for negligent interference with that interest.

Most writers can see no justification for the pre-*Hitaffer* state of the law.[3] And indeed, the reasons suggested by the courts which have refused to follow *Hitaffer* are less than compelling. We believe they have been demonstrated to be without merit.[4]

2. Those courts following Hitaffer have been: Dini v. Naiditch, 20 Ill.2d 406, 170 N.E.2d 881, 86 A.L.R.2d 1184 (1960); Montgomery v. Stephan, 359 Mich. 33, 101 N.W.2d 227, 228 (1960); Brown v. Georgia-Tennessee Coaches, Inc., 88 Ga.App. 519, 77 S.E.2d 24 (1953); Gordy v. Powell, 95 Ga.App. 822, 99 S.E.2d 313; Bailey v. Wilson, 100 Ga.App. 405, 111 S.E.2d 106 (1959); Missouri Pacific Transportation Co. v. Miller, 227 Ark. 351, 299 S.W.2d 41 (1957); Acuff v. Schmit, 248 Iowa 272, 78 N.W.2d 480 (1956); Cooney v. Moomaw, 109 F.Supp. 448 (D.C.Neb.1953); Hoekstra v. Helgeland, 78 S.D. 82, 98 N.W.2d 669 (1959); Luther v. Maple, 250 F.2d 916 (8th Cir. 1958) (Neb.); Hayes v. Swenson, 14 Pa.Dist. & Co.R.2d 708; Yonner v. Adams, 3 Storey 229, 53 Del. 229, 167 A.2d 717 (1961); Duffy v. Lipsman Fulkerson Co., 200 F.Supp. 71 (D.C.Mont. 1961); Novak v. Kansas City, Transit, Inc., 365 S.W.2d 539 (Mo.1963); Shepherd v. Consumers Coop. Assoc., 384 S.W.2d 635 (Mo.);

These cases have expressly rejected the Hitaffer rationale: Ripley v. Ewell, 61 So.2d 420 (Fla.1952); Baird v. Cincinnati N. O. & T. R.R. Co., 368 S.W.2d 172 (Ky., 1963); LaEace v. Cincinnati Newport & Covington Ry. Co., 249 S.W. 2d 534 (Ky., 1952); LaRocca v. American Chain & Cable Co., 23 N.J.Super. 195, 92 A.2d 811 (1952); Ash v. S. S. Mullen, Inc., 43 Wash.2d 345, 261 P.2d 118 (1953); Nelson v. A. M. Lockett & Co., 206 Okl. 334, 243 P.2d 719 (1952); Garrett v. Reno Oil Co., 271 S.W. 764 (Tex.Civ.App.1954); Jeune v. Del E. Webb Constr. Co., 77 Ariz. 226, 269 P. 2d 723 (1954); Franzen v. Zimmerman, 127 Colo. 381, 256 P.2d 897 (1953); Nickel v. Hardware Mutual Cas. Co., 269 Wis. 647, 70 N.W.2d 205 (1955); Kronenbitter v. Washburn Wire Co., 176 N.Y.S.2d 354 (1958); Deshotel v. Atchison T. & S. F. Ry., 50 Cal.2d 664, 328 P.2d 449 (1958); Coastal Tank Lines v. Canoles, 207 Md. 37, 113 A.2d 82 (1955); Seagraves v. Legg, 147 W.Va. 331, 127 S.E.2d 605 (1962);

See also Anno. 23 A.L.R.2d 1378, and supplements thereto.

3. See Prosser, Torts, 703–704 (1955); 64 Harv.L.Rev. 672 (1951); Note, 30 Ind.L.J. 276 (1955).

4. The opinion in Dini v. Naiditch, 20 Ill. 2d 406, 170 N.E.2d 881, 86 A.L.R.2d 1184 (1960), which establishes the wife's right to sue for loss of consortium in Illinois,

One of these arguments is that the wife's action is too remote and indirect to warrant protection. Brown v. Kistleman, 177 Ind. 692, 98 N.E. 631, 40 L.R.A.,N.S., 236 (1912); Feneff v. N. Y. Central & Hudson River R. R. Co., 203 Mass. 278, 89 N.E. 436, 24 L.R.A.,N.S., 1024. However, it is readily apparent that although the husband's reciprocal loss would logically be equally as remote, he has been allowed to sue therefor. Montgomery v. Stephan, 359 Mich. 33, 101 N.W.2d 227, 228 (1960); *Hitaffer,* supra, 183 F.2d at 818.

Another reason advanced for denying the wife a right of action is that it may result in double recovery since the husband's actions for decreased ability to support his family would overlap with the wife's suit for loss of his services. Deshotel v. Atchison T. & S. F. Ry., 50 Cal.2d 664, 328 P.2d 449 (1958); Nickel v. Hardware Mutual Casualty Co., 296 Wis. 647, 70 N.W.2d 205 (1955). But as was indicated above, consortium involves other elements in addition to loss of services. The wife's interest in these intangibles does not overlap with the husband's action for loss of earning power. These elements are independent of the loss of services factor, and should be assessed separately where the possibility of a double recovery exists. As *Hitaffer* points out at 183 F.2d page 815, double recovery can be avoided by deducting from the wife's damages, any amount recovered by the husband for loss of earning power.

█ Some courts insist that since the wife had no right at common law, the lifting of the disabilities of coverture did not create new rights. Howard v. Verdigris Valley Elec. Co-op., 201 Okl. 504, 207 P.2d 784 (1949); Sheard v. Oregon Electric Ry., 137 Or. 341, 2 P.2d 916 (1931). But where there is an interest to be protected, the common law will do so. The early common law considered the wife's rights to be merged with those of her husband. Removing the barriers of coverture did not affirmatively create new rights, but gave the wife a separate and distinct legal existence. Inherent in that status were certain interests co-extensive with those already enjoyed by her husband. Her husband's conjugal interests already were protected. Can it be said that either in logic or reason any justification appears for the creation of new interests without the attendant right to protect them in court? We have already recognized that married women already possessed the right to sue for *intentional* interference with the marriage relationship. It would seem that the interest to be protected is identical whether interfered with negligently or intentionally. No justification is apparent for treating the situations differently, *Hitaffer* recognizes this:

"There can be no doubt, therefore, that if a cause of action in the wife for the loss of consortium from alienation of affections or criminal conversation is to be recognized it must be predicated on a legally protected interest. Now then, may we say that she has a legally protected and hence actionable interest in her consortium when it is injured from one of these so-called intentional invasions, and yet, when the very same interest is injured by a negligent defendant, deny her a right of action? It does not seem so to us. Such a result would be neither legal nor logical. On the contrary, it has already been held in this jurisdiction that her interest in the marriage relation is co-extensive with that of her husband, and that any interference therewith is a violation of her legal rights. When a legally protected interest of a person has been injured by the wrongful act of another, it is no less actionable because the invasion was negligent rather than intentional or malicious. Some authorities seek to avoid the impact of such logic by holding

in this court's judgment, demolished these reasons as valid criteria. Following is a brief discussion of our feelings on each of the proffered reasons.

that in the cases involving intentional invasions to the consortium the injury to the wife is direct, because the husband having participated with the defendant, cannot join with her and benefit from his own wrong. The wife therefore has a cause of action. But we are unable to see how the injury to the consortium is any less direct when the invasion is by a negligent act. Certainly the directness or remoteness of the injury cannot be affected by the fact that in such cases the measure of the wife's damages may be less because of the husband's recovery of the diminished value of his obligation to support his wife. * * * " (183 F.2d at 817)

See Novak v. Kansas City Transit, 365 S.W.2d 539, 541–542 (Mo.1963).

Another ground advanced for denial of the wife's action is that such denial might avoid multiplicity of litigation. Hoffman v. Dautel, 189 Kan. 165, 368 P.2d 57 (1952); Criqui v. Blaw-Knox Corp., 318 F.2d 811, 814 (10th Cir. 1963). This is because the husband will likely sue for loss of earning power, and to allow his wife to sue in addition, would assertedly result in unjustified multiple litigation. However, it has been pointed out that certain sentimental interests are encompassed by the action for loss of consortium, which are not compensated for by the husband's action for loss of earnings. The husband can recover for loss of these intangibles when his wife is injured. Her rights are based on the same principles which permit the husband's reciprocal right. The multiplicity argument succeeds only in lessening the number of lawsuits at the expense of barring redress for a legitimate interest of the wife.

Some courts think the problem is one for the legislature. Deshotel v. Atchison T. & S. F. Ry., supra 328 P.2d at 452, Ripley v. Ewell, 61 So.2d 420 (Fla. 1952); Ash v. S. S. Mullen, Inc., 43 Wash.2d 345, 261 P.2d 118 (1953). Cf. Dini v. Naiditch, 20 Ill.2d 406, 428, 170 N.E.2d 881, 86 A.L.R.2d 1184 (1960).

For the most part, many of the courts which have refused to follow Hitaffer have either expressly or implicitly questioned the wisdom of the rule denying the wife a cause of action, but have either felt compelled to follow precedent, or think the problem is for the legislature. Miller v. Sparks, 136 Ind.App. 148, 189 N.E.2d 720, 722 (1963), decided by a lower court in Indiana, quite clearly intimated that the Indiana Supreme Court should overrule its earlier decisions. See also Larocca v. American Chain & Cable Co., 23 N.J.Super. 195, 92 A.2d 811 (1952); Ripley v. Ewell, 61 So.2d 420 (Fla.1952); Coastal Tank Lines v. Canoles, 207 Md. 37, 113 A.2d 82 (1955); Garrett v. Reno Oil Co., 271 S.W.2d 764 (Tex.Civ.App.1954).

Some authorities have felt that the solution is to equalize the positions of married people, by not only denying the wife the right to sue for loss of consortium, but by abolishing the husband's similar right as well. Helmstetler v. Duke Power Co., 224 N.C. 821, 32 S.E. 2d 611, 614 (1945); West v. City of San Diego, 346 P.2d 479 (Cal.App.1959). See 36 Notre Dame L. 439 (1961). The reasoning goes like this. The husband always had the right to recover for the loss of his wife's consortium at common law. The removal of the disabilities of coverture put his wife on an equal footing in the eyes of the law. The reason for the husband's right to sue for injuries to his wife having ceased—that is, her previous disability to sue for injuries to herself having been lifted—his right should also be abolished.

This position at least has the merit of consistency, by abolishing the right of action for both husband and wife, and by denying that the interests represented by the action exist for either party. Whether or not we agree with the view that the reason for suit has ceased is not relevant here because Indiana has adopted the policy that the husband does have the right to sue. That policy is not in issue here. We must solely decide: assuming that to be the law, does the denial of an equal right to the

wife constitute an unconstitutional deprivation of equal protection?

██ Our decision cannot be based upon our opinion of the wisdom shown by the Indiana view of the law. That is where our position in considering this matter differs from *Hitaffer* and the cases adhering to it, and meshes with Owen v. Illinois Baking Co. Unlike the Hitaffer line of cases, which were able to ·be decided without consideration of the constitutional issue, we are bound by the expressed law of the situs of the tort. Only if that law is *unconstitutional,* as opposed to unwise, may we overturn it. Thus we may only uphold plaintiff's right to maintain count two if the denial of her cause of action under Indiana law would violate the Equal Protection clause. That a policy is unwise is an insufficient reason, without more, for it to reach the stature of an unconstitutional discrimination—it must, at the least, be arbitrary and unreasonable.

No reason is apparent which would support the diverse treatment accorded husbands and wives in Indiana on this issue. It might be suggested that the process of history has carved out a definition of women's rights based upon a rationale which has ceased to exist, but which is based upon firm precedent.

█ We are aware of no principle which protects a longstanding axiom of law from being invalidated when it is antiquated and offends some portion of the constitution as currently interpreted by the Supreme Court. In holding that the common law of Florida has been abrogated by the Fourteenth Amendment, and that a woman may sue her husband despite common law doctrine to the contrary, a South Carolina Federal District Court recognized that married women are "entitled to the same protection of the law as other individuals regardless of ancient provisions of the common law." Alexander v. Alexander, 140 F.Supp. 925, 928 (W.D.S.C.1956). That women cannot sue for loss of consortium is not excusable because based upon an historical legal doctrine which

viewed a woman as her husband's chattel or "servant." Some positive justification is required. Nothing persuasive is offered by any of the cases which deny her this right.

█ Marriage is no longer viewed as a "master-servant" relationship. It has assumed a special status in which each party has equal rights under the law. As put long ago by the New York Court of Appeals in Bennett v. Bennett, 116 N.Y. 584, 590, 23 N.E. 17, 6 L.R.A. 553, as cited in Hitaffer, at page 816: (183 F.2d)

"The actual injury to the wife from loss of consortium which is the basis of the action, is the same as the actual injury to the husband from that cause. His right to the conjugal society of his wife is no greater than her right to the conjugal society of her husband. Marriage gives each the same rights in that regard. Each is entitled to the comfort, companionship, and affection of the other. The rights of the one and the obligations of the other spring from the marriage contract, are mutual in character, and attach to the husband as husband and to the wife as wife. Any interference with these rights, whether of the husband or of the wife, is a violation, not only of natural right but also of a legal right arising out of the marriage relation. * * * As the wrongs of the wife are the same in principle, and are caused by acts of the same nature, as those of the husband, the remedy should be the same."

The *Hitaffer* court put it this way: (183 F.2d at 816)

"It is clear to us, in light of this plain broad language, that in order to circumvent its impact on all cases involving the loss of consortium, whether by the husband or the wife, we would have to engage in the legalistic gymnastics which we are here criticizing. There can be no doubt that the expressed view of this court is that the husband and the wife have equal rights in the marriage relation which will receive equal protection of the

law. That these rights existed prior to the passage of the Married Women's Acts cannot be doubted. The Act simply removed the wife's disability to invoke the law's protection. And what we have said in this regard is equally applicable to the large number of cases which satisfy themselves with simply stating that the wife had no such action at common law and the Emancipation Acts gave her no new causes of action. It is not for us, at this late date under the modern concepts of the marital relations, to deny the wife legal protection of this right."

The Indiana doctrine, as stated in Boden v. Del-Mar Garage, 205 Ind. 59, 185 N.E. 860, 863 (1933) was premised upon the theory that actions for loss of consortium were in fact based upon the loss of services. Since the husband or his representative could maintain an action for loss of services or decreased earning power, there appeared no reason to allow his wife what would amount to double recovery. *Boden* distinguished the wife's right to recover for intentional interferences such as alienation of affection on the ground that such an action "is based on the injury done to her, and not to the husband." (185 N.E. at 863). But, as above stated Burk v. Anderson, 232 Ind. 77, 109 N.E.2d 407 (1952), undermined the theory of the *Boden* case by recognizing that loss of consortium involves other elements such as love, affection, society, companionship, and sexual relation. Cf. McDaniel v. McDaniel, 245 Ind. 551, 201 N.E.2d 215, 218 (1964). A wife certainly has rights in these elements of consortium equal to those of her husband. As stated in *Hitaffer:*

"Furthermore, we can conceive of no reasons for denying the wife this right for the reason that in this enlightened day and age they simply do not exist. On the contrary it appears to us that logic, reason and right are in favor of the position we are now taking. The medieval concepts of the marriage relation to which other jurisdictions have reverted in order to reach the results which have been handed to us as evidence of the law have long since ceased to have any meaning. It can hardly be said that a wife has less of an interest in the marriage relation than does the husband or in these modern times that a husband renders services of such a different character to the family and household that they must be measured by a standard of such uncertainty that the law cannot estimate any loss thereof. The husband owes the same degree of love, affection, felicity, etc., to the wife as she to him. He also owes the material service of support, but above and beyond that he renders other services as his mate's helper in her duties, as advisor and counselor, etc. Under such circumstances it would be a judicial fiat for us to say that a wife may not have an action for loss of consortium due to negligence." (183 F.2d at 819)

In light of *Burk*, no justification remains for the *Boden* rationale. Miller v. Sparks, 136 Ind.App. 148, 189 N.E.2d 720, 722 (1963), seemingly agreed, but as a lower appellate court was without power to overrule *Boden*. The court said:

"We have emphasized Judge Gilkison's thought (in Burk v. Anderson). The writer of this opinion is inclined to agree with the thought expressed by Judge Gilkison that the consortium rights of one spouse should be co-extensive with the consortium rights of the other. However, it appears that the majority members of the Supreme Court did not agree with this idea and supported the doctrine as announced in Boden v. Del-Mar Garage, supra. We are bound by the decisions of our Supreme Court, and the doctrine they announced in the Boden case, supra, is binding upon us until the same is changed, either by the Supreme Court or legislative enactment. * * *"

In addition, Owen v. Illinois Baking Corp., 260 F.Supp. 820, 821 (W.D.Mich.

1966) refutes a theory initially advanced to support the Indiana rule:

"In Brown v. Kistleman, 177 Ind. 692, 98 N.E. 631, 40 L.R.A.,N.S., 236 (1912), the court held that this interest of the wife was not a property right or derived from a contract of bargain and sale, and it lies in an area which the law will not enter except out of necessity. However the right is characterized, it arises from the marital relation, and to say that it inheres in the husband but not the wife is to indulge in what the Hitaffer court termed 'legal gymnastics.' "

It is indeed true that certain of the ancient disabilities of coverture remain, and that in the law husband and wife still are not on a parity in all respects. By way of example, the husband is obligated to support his family, and cannot dispose of his property by will so as to defeat his wife's right to take at least one-third of his property. But there is a legitimate reason for such laws. In our society, the husband by force of custom and practice is regarded as the family breadwinner. Surely our laws may conform to soundly rooted custom. Indeed custom gave birth to such laws and they are as reasonable today as when enacted. (I might expect a challenge on this point from some married men.)

But no reasonable suggestion can be offered any longer to explain the disparity in the spouses' relative rights to sue for loss of consortium. It is fair to say that no such rationale exists.

It is clear that classification per se is not prohibited by the equal protection clause. In order to constitute a violation thereof, a law must establish a classification so unreasonable as to be purely arbitrary. Or as the Supreme Court has oft-times stated: "A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it." McGowan v. State of Maryland, 366 U.S. 420, 426, 81 S.Ct. 1101, 1105, 6 L.Ed.2d 393 (1961); New York Rapid Transit Corp. v. City of New York, 303 U.S. 573, 578, 58 S.Ct. 721, 82 L.Ed. 1024 (1938).

The Supreme Court has been noticeably more reluctant to interfere with state policy where economic interests, as distinguished from the "basic civil rights of man", are involved. This reluctance has prompted at least one writer to state that the Equal Protection Clause has "two sides"—one imposing a definition of reasonableness for classifications involving economic interests which is "comfortably loose", and the other rigorously scrutinizing any classification which impinges upon the "basic civil rights of man". McKay, Political Thickets and Crazy Quilts; Reapportionment and Equal Protection, 61 Mich.L. Rev. 645, 666 (1963); See Krause, Equal Protection for the Illegitimate, 65 Mich. L.Rev. 477 (1966). The defendant suggests that since the instant dispute concerns an "economic interest" of Mrs. Karczewski, rather than a "basic civil right," that an economic classification which distinguishes between husbands and wives is tenable.

But the Supreme Court's reluctance to act in economic matters has not prevented it from applying the equal protection clause to certain conflicts regarding state regulation of economic activity. In Morey v. Doud, 354 U.S. 457, 77 S.Ct. 1344, 1 L.Ed.2d 1485 (1957), the Court struck down a state legislation which created a closed class by exempting money orders issued by the American Express Company from regulations applicable to all other issuers of such orders. In Wheeling Steel Corp. v. Glander, 337 U.S. 562, 69 S.Ct. 1291, 93 L.Ed. 1544 (1949), an ad valorem tax imposed by a state only upon certain intangible property owned by foreign corporations which did business within the state, was held to violate the equal protection clause since the tax was not levied upon domestic corporations. And in several other cases, the Court has recognized that economic interests are protected by the equal protection clause. Hillsborough v. Cromwell, 326 U.S. 620, 66 S.Ct. 445, 90 L.Ed. 358 (1946) (discrim-

inatory property tax assessment); Hartford Steam Boiler Inspection and Ins. Co. v. Harrison, 301 U.S. 459, 57 S.Ct. 838, 81 L.Ed. 1223 (1937) (Discrimination between various categories of insurance companies.)

■ Nevertheless, in matters involving economic interests, it must clearly be shown that the challenged classification is without any reasonable basis, and is clearly arbitrary, before it can be upset on equal protection grounds. As was stated long ago in Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78–79, 31 S.Ct. 337, 340, 55 L.Ed. 369 (1911), and still relevant today:

> "1. The equal protection clause of the 14th Amendment does not take from the state the power to classify in the adoption of police laws, but admits of the exercise of a wide scope of discretion in that regard, and avoids what is done only when it is without any reasonable basis, and therefore is purely arbitrary. 2. A classification having some reasonable basis does not offend against that clause merely because it is not made with mathematical nicety, or because in practice it results in some inequality. 3. When the classification in such law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed. 4. One who assails the classification in such a law must carry the burden of showing that it does not rest upon any reasonable basis, but is essentially arbitrary."

Accord; McGowan v. State of Maryland, 366 U.S. 420, 525, 81 S.Ct. 1101, 6 L.Ed. 2d 393 (1961).[5]

In the instant case, we have already determined that the denial of the wife's right of action can no longer be explained on any rational basis. It is clearly no more than a relic of an ancient era in the law. Where no reasonable justification for its existence other than longevity can be offered, and defendant and the Indiana courts offer no other, it must be considered to be an arbitrary classification.

Defendant however, insists that the Supreme Court does not often enter into the area of marital relationships, and has never found a law distinguishing on the basis of sex to be in violation of the Fourteenth Amendment. It cites several cases in support of the proposition that sex furnishes a reasonable basis for legislative or judicial classification. But it suggests no reasonable basis for the instant classification. Certainly the classifications upheld by the Supreme Court in the cases cited by defendant had a reasonable basis. They involved limitations on the number of hours women could work, Muller v. State of Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908); Miller v. Wilson, 236 U.S. 373, 35 S.Ct. 342, 59 L.Ed. 628 (1915); Riley v. Commonwealth of Massachusetts, 232 U.S. 671, 34 S.Ct. 469, 58 L.Ed. 788 (1914); Bosley v. McLaughlin, 236 U.S. 385, 35 S.Ct. 345, 59 L.Ed. 632 (1915); Radice v. People of State of New York, 264 U.S. 292, 44 S.Ct. 325, 68 L.Ed. 690 (1924), or womens' minimum wage laws. West Coast Hotel Co. v. Parrish, 300 U.S. 379, 57 S.Ct. 578, 81 L.Ed. 703 (1937). As the Court recognized in those cases: " 'a woman's physical structure and the performance of maternal functions place her at a disadvantage in the struggle for subsidence' and that her physical well being 'becomes an object of public interest and care in order to preserve the strength and vigor of the race.' " West Coast Hotel Co. v. Parrish, supra at 394, 57 S.Ct. at 583.

The instant classification bears no relation to a woman's physical well being as did those cases. It discriminates against her without reason.

5. For a collection of cases which have refused to invalidate certain economic situations on grounds of equal protection, see McKay, Political Thickets and Crazy Quilts; Reapportionment and Equal Protection, 61 Mich.L.Rev. 645, 669 n. 100 (1963).

Nor is the failure of the Supreme Court in Hoyt v. State of Florida, 368 U.S. 57, 82 S.Ct. 159, 7 L.Ed.2d 118 (1961), to strike down a Florida law excluding women from jury duty unless they volunteered to serve, helpful to defendant. For it is likely that the voluntary feature of that law saved it from invalidation. Significantly, a three-judge federal court has recently held the total exclusion of women from jury service to be an arbitrary classification, and therefore, a denial of the equal protection of the laws. White v. Crook, 251 F.Supp. 401 (M.D.Ala. 1966).

Furthermore, Barrington v. Barrington, 206 Ala. 192, 89 So. 512, 17 A.L.R. 789 (1921), cited by defendant, is not applicable here. In that case, the Supreme Court of Alabama upheld a state statute permitting a wife to sue for divorce on the grounds of non-support, and that she had lived separately from her husband for a specified period, while denying the husband the right to sue for divorce on the same grounds. But unlike the instant case, that classification was based on reasonable grounds relating to the husband's duty of support. The Court said: (at 514)

"Specifically, as to the case under consideration, the single factor of the husband's legal duty to shelter and support the wife, and the demoralizing impolicy of grounding an equitable remedy in his favor upon his repudiation or evasion of that important and necessary duty, is a sufficient basis for the discriminatory favor here shown to the wife."

Indeed, all of the cases cited by the defendant involve state use of the police power to apply classification to certain activities of women which relate to their special status as wives and mothers in the community, and which recognize that they are not generally as physically strong as males.

But none of those considerations are present in the instant case. We have demonstrated the absolute lack of any reasonable justification for the disputed Indiana doctrine. A recent article has recognized that women are deserving of special status and legislation which relates to their function as mothers and their relative physical distinctions from men. Murray and Eastwood, Jane Crow and the Law; Sex Discrimination and Title VII, 34 Geo.Wash.L.Rev. 232, 238–39 (1965). But .the article contends, classification based on sex, like any other classification, is not justified where it restricts womens' rights in a manner which has no bearing on either the maternal function, physical characteristics, or any other reasonable explanation. Where classification is done without reason, "it disregards individuality and relegates an entire class to inferior status." The article suggests that the concept of "classification by sex", which was derived from progressive labor legislation, and upheld in such cases as Muller v. State of Oregon, 208 U.S. 412, 28 S.Ct. 324, 52 L.Ed. 551 (1908), cited by defendant, has been extended as a basis for legislative classification to subjects remote or unrelated to sex. And this is undoubtedly true, so that "classification by sex", even without any reasonable justification has either been benignly approved, or gained a certain dubious aura of respectability. See Murray and Eastwood, at 237–239.

We believe that the instant classification by sex certainly is unrelated to any of the concerns which could motivate a distinction on that basis. As we have indicated, the intangible segments of the elements comprising the cause of action for loss of consortium are equally precious to both husband and wife. Certainly, no justification is apparent, or is offered, to affirmatively support the classification. We think, therefore, that it discriminates unreasonably and arbitrarily against women, and must be abolished.

It is not relevant to say that because all wives are similarly situated all are equally protected. For that is to ill-define the relevant classification. In these circumstances, all married people, husbands *and* wives, must comprise the class to be protected. That is because

each has an equal interest in the elements of the marital relationship which are protected by the action for loss of consortium. To deny it to wives is a classification without reason, is arbitrary, and is consequently a violation of the Equal Protection Clause of the Fourteenth Amendment.

In view of our decision on this issue of law, defendant's motion for partial summary judgment is denied and plaintiff Alma Karczewski may prosecute count two of this complaint.