**HARTFORD ACCIDENT & INDEM-
NITY CO., Plaintiff,**

v.

**Edward LISKY a/k/a Michael Raymond,
Robert Dell and Yankee Plastics,
Inc., Defendants.**

No. 69 C 1687.

United States District Court,
N. D. Illinois, E. D.

Jan. 13, 1971.

James D. Mowen, Gilmartin & Wisner,
Chicago, Ill., for plaintiff.

Carey, Filter & White, Chicago, Ill.,
for intervenor Citizens Nat. Bank of
Chicago.

Norman L. Hafron, Rosenfeld, Hafron & Shapiro, Chicago, Ill., for defendant Yankee Plastics, Inc.

## MEMORANDUM OPINION

DECKER, District Judge.

This is a diversity action brought by a surety company, Hartford Accident & Indemnity Company ("Hartford"), against Yankee Plastics, Inc. ("Yankee"), Edward Lisky, also known as Michael Raymond, and Robert Dell. Defendants Lisky and Dell are alleged to have pledged certain unauthorized certificates of stock in defendant Yankee as collateral for loans made to them by Citizens National Bank of Chicago ("Citizens"). Lisky is alleged to have traded further shares of the unauthorized Yankee stock to two brokerage houses, Betts, Borland & Company and Shearson, Hammill & Company. Lisky and Dell defaulted on the loans from Citizens, and when Citizens, Betts, Borland, and Shearson, Hammill tendered their stock certificates to Yankee, it refused to transfer them into their respective names. Hartford completely indemnified Betts, Borland and Shearson, Hammill under separate bonds, and it indemnified Citizens for all of its loss except $2,000. Hartford then brought this action to recover $55,550, the total amount paid out by it under the bonds. Citizens intervened as a party plaintiff to recover the $2,000 loss it suffered which was not indemnified by Hartford.

The amended complaint contains four counts. The first count is directed at defendants Lisky and Dell only. However, Dell was not served with a summons or complaint, and Lisky, who is now in prison, was served but entered no appearance. As a result, Hartford decided at trial to concentrate its case on other counts of the complaint.

The second count charges Yankee with negligence in permitting unauthorized shares of its stock to be issued, and then in being dilatory in notifying prospec-

tive purchasers of the stock that it had been issued illegally.

Count III is a conspiracy count, and it was dismissed upon plaintiff's own motion at the beginning of the trial.

The fourth count charges Yankee with violating § 8–205 of the Uniform Commercial Code, which makes certain transfers of securities issued under unauthorized signatures effective in favor of purchasers for value and without notice. At trial, Hartford pursued this theory and the negligence theory (Count II) almost exclusively, and for that reason the analysis will be limited to these two counts.

The background of this case stretches back to 1965 when Jack Zuckerman, then an officer and director of Yankee, reported that 43,500 shares of stock which he owned in Yankee had become lost or stolen. Franklin National Bank, which was then Yankee's transfer agent, issued replacement shares. Three years later, Lisky (then using the name Raymond) claimed to be a holder in due course of 30,500 of the shares originally lost by Zuckerman, and he commenced an action in New York to compel Yankee to transfer ownership of those shares into his name. The Lisky action is still pending, and it has been consolidated with an action brought by Jack Zuckerman, who is seeking to transfer ownership of certain other Yankee stock into his name. Meanwhile, the New York court has permitted Yankee to hold 43,500 shares of its stock in escrow pending the outcome of that litigation.

The incident giving rise to this lawsuit occurred sometime during the weekend of September 28–29, 1968. At that time, Yankee was acting as its own transfer agent. Two employees had access to the transfer records. They were William J. Herrmann, the Vice President and Secretary of Yankee, and Alfred Averell, a recently hired employee. During that weekend somebody with access to the transfer records [1]

---

1. Subsequent investigation by the police revealed no sign of forcible entry.

caused the 30,500 shares of stock originally issued to Zuckerman and held by Raymond (Lisky) in his action in the New York state court to be transferred without authorization to the names of Lisky (22,500 shares) and defendant Dell (8,000 shares). This form of self-help stock transfer remedy was discovered on Monday, September 30, and was promptly reported to the police and to the National Association of Securities Dealers.

Shortly after the discovery of the unauthorized stock transfer, Averell was called into the office of Lawrence Rosen, the Chairman of the Board and Chief Executive Officer of Yankee. Neither Averell nor Rosen testified at the trial, and the only information about that meeting comes from Rosen's deposition, which was introduced into evidence. On advice of his attorney, Rosen refused to tell whether he accused Averell of the act. However, subsequent to the meeting, Averell's employment was terminated, and he has not been heard from since.

On October 8, 1968, Lisky traded 1,000 of the unauthorized shares to Shearson, Hammill in Florida. Then he turned to Betts, Borland, which bought 1,100 shares on October 20. In January and February of 1969, both Lisky and Dell obtained loans from Citizens, secured by a total of 12,500 shares of the stock. Following default on the loan and Yankee's refusal to transfer the stock involved in the above three transactions, Hartford paid off on its indemnity bonds and brought this action.

Turning to Count II of the complaint, plaintiff at trial pursued two different theories of negligence on behalf of Yankee. One theory was that Averell, or someone acting with his authorization, had made the unauthorized transfer on the books, and that Yankee was liable for negligence in permitting its employee access to the transfer books. Assuming, without deciding, that Averell was in fact responsible, there was absolutely no evidence that Averell had any criminal propensities which Yankee should have known about before hiring him. Averell, for all Yankee knew or should have known, was completely trustworthy.

■ The alleged negligence on the part of Yankee took place in New York, hence the substantive law of that jurisdiction controls. See Karczewski v. Baltimore & Ohio R. R. Co., 274 F.Supp. 169, 170 (N.D.Ill.1967). It is well settled that an employer may be held liable for the willful or malicious acts of its employee if performed within the scope of his employment. Bracco v. Arro Sportswear Co., Sup., 154 N.Y.S.2d 348 (1956), rev'd on other grounds, 2 A.D.2d 885, 155 N.Y.S.2d 856 (per curiam), aff'd, 3 N.Y.2d 726, 163 N.Y.S.2d 967, 143 N.E.2d 515. However, if the employee's act was done to accomplish some independent purpose of his own, then it was not within the scope of his employment and the employer is not liable. Oneta v. Paul Tocci Co., 271 App.Div. 681, 67 N.Y.S.2d 795 (1947), aff'd, 297 N.Y. 629, 75 N.E.2d 743. In this case it is clear that if Averell did make the unauthorized transfer on Yankee's books, it was for his own independent purpose and not for the benefit of Yankee itself. Thus, Averell was outside the scope of his employment, and Yankee cannot be held liable.

■ The second theory of negligence advanced by plaintiff was that Yankee failed to give adequate notice to prospective purchases that the unauthorized stock had in fact been issued and would probably be traded. Shortly after the discovery of the issuance, Yankee notified the National Association of Securities dealers (N.A.S.D.) that 30,500 shares of unauthorized stock was outstanding. The N.A.S.D. delayed approximately one month in notifying its members (brokers and dealers in the securities business), during which time Lisky traded shares to both Betts, Borland and Shearson, Hammill. Any grievance that Hartford now has as subrogee of the brokerage houses is properly asserted

against the N.A.S.D., not Yankee. If anybody is at fault for the one month delay, it is the N.A.S.D., and its members should look to the parent organization for redress, if in fact they are so entitled. It is clear from the facts, however, that Yankee had no duty to supervise the N.A.S.D.'s notification of its members to make certain that it was given promptly, cf. Rosen v. Bronx Hospital, 308 N.Y. 925, 127 N.E.2d 82 (1955) (per curiam), hence Hartford cannot prevail on the second theory of negligence.

■ Turning finally to Count IV of the complaint, plaintiff alleges that, in refusing to transfer the shares of Yankee stock which were sold to Shearson, Hammill and Betts, Borland and which were pledged to Citizens, Yankee violated § 8–205 of the U.C.C., 62½ McKinney's N.Y.Stat. § 8–205, which provides:

"§ 8–205. *Effect of Unauthorized Signature on Issue*

"An unauthorized signature placed on a security prior to or in the course of issue is ineffective except that the signature is effective in favor of a purchaser for value and without notice of the lack of authority if the signing has been done by

(a) an authenticating trustee, registrar, transfer agent or other person entrusted by the issuer with the signing of the security or of similar securities or their immediate preparation for signing; or

(b) an employee of the issuer or of any of the foregoing entrusted with responsible handling of the security."

There is little doubt that the two brokerage houses and Citizens were purchasers of the securities. 62½ McKinney's N.Y.Stat. § 1–201(32) (33). Nor is it disputed that they acquired the securities for value, 62½ McKinney's N.Y.Stat. § 1–201(44), and without notice. 62½ McKinney's N.Y.Stat. §§ 8–304, 1–201(25). The sole issue under

Count IV is whether pliantiff has established by a preponderance of the evidence that the unauthorized signing was done by one of the persons designated in § 8–205(a) (b).

It has been plaintiff's position throughout that Averell, or someone acting under him, was responsible for the unauthorized transfer. Certainly Averell is "an employee of the issuer * * * entrusted with responsible handling of the security." § 8–205(b). However, the evidence produced at trial which tended to link Averell with the unauthorized transfer was at best circumstantial, and in any case somewhat scant. True he had access to Yankee's transfer records. And it is also suspicious that he left the employ of Yankee shortly after returning to work on the day the transfer was discovered. However, it can be said on Averell's behalf that he did show up for work the Monday morning following the transfer. He did not leave until after a confrontation with Rosen. Averell was, of course, unavailable to testify, and when Rosen was asked during his deposition what was said at that confrontation, he declined to answer. I find it just as possible that Averell was dismissed from Yankee's employ because of some suspicions he held as it is that he fled out of a feeling of guilt.

Finally, and most important, plaintiff was unable to demonstrate any collusion between Averell on the one hand, and Lisky and Dell on the other. If Averell did effect the transfer, as plaintiff contends, then he must have been somehow rewarded by Lisky and Dell. However, no evidence was introduced to establish such a relationship. Plaintiff has failed to establish by a preponderance of all the evidence that Averell committed the transfer, hence the transfer was not effective within the terms of 8–205(b), and Yankee is not liable under Count IV.

For the foregoing reasons, judgment is entered in favor of defendant Yankee and against plaintiff Hartford and intervenor Citizens.